Peter R. Afrasiabi (Bar No. 193336)
Email: pafrasiabi@onellp.com
**ONE LLP**
4000 MacArthur Blvd.
East Tower, Suite 500
Newport Beach, CA 92660
Telephone: (949) 502-2870
Facsimile: (949) 258-5081

Attorneys for Defendants,
WOO SIGNATURES, LLC, TADEH
BOOGHOSIANSSARDABI, FARSHID
KARAMZAD GOFLSAZ, and ARASH SEDIGHI

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| BOOST BEAUTY, LLC, a California limited liability company,<br><br>    Plaintiff,<br><br>  v.<br><br>WOO SIGNATURES, LLC, a California limited liability company; TADEH BOOGHOSIANSSARDABI, an individual; FARSHID KARAMZAD GOFLSAZ, an individual; ARASH SEDIGHI, an individual; and DOES 1 through 10, inclusive,<br><br>    Defendants. | Case No. 2:18-cv-02960-CAS-E<br>Hon. Christina A. Snyder<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR (1) TERMINATING AND FINANCIAL SANCTIONS AND (2) DISMISSAL WITH PREJUDICE OF COPYRIGHT CLAIMS AND (3) FEES UNDER THE COPYRIGHT ACT**<br><br>Date:      October 28, 2019<br>Time:      10:00 a.m.<br>Crtrm.   8D |

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................ 1

II.    FACTS ............................................................................................... 1

III.   INHERENT POWER TO SANCTION, 28 U.S.C. § 1927 AND RULE 11 .. 3
       A.   The Misconduct ..................................................................... 4
       B.   Inherent Power Applies .......................................................... 6
       C.   Section 1927 Applies ............................................................. 7
       D.   Rule 11 Applies ...................................................................... 8

IV.    THE DISMISSAL OF THE COPYRIGHT CLAIM WIHOUT PREJUDICE
       SHOULD BE CONVERTED TO WITH PREJUDICE AND FEES
       SHOULD BE AWARDED ................................................................... 9
       A.   Dismissal with Prejudice ....................................................... 9
       B.   Defendants Prevailed .............................................................. 9
            1.   Degree of Success Obtained ...................................... 10
            2.   Objective Unreasonableness ..................................... 10
            3.   Motivation ................................................................. 11
            4.   Compensation and Deterrence ................................... 11
            5.   A Fee Award Furthers the Interests of the Copyright Act ....... 12
            6.   Other factors ............................................................. 13

V.     TERMINATING SANCTIONS SHOULD ISSUE ................................ 14

VI.    FEES AND COSTS AWARDS SHOULD ALSO ISSUE ........................ 17

VII.   CONCLUSION ................................................................................ 18

**MEMORANDUM OF POINTS AND AUTHORITIES**

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alvarado-Morales v. Digital Equip. Corp.*,
    843 F.2d 6513 (1st Cir. 1988) ................................................................. 7

*Beam v. IPCO Corp.*,
    838 F.2d 242 (7th Cir. 1988) .................................................................. 7

*Chambers v. NASCO, Inc.*,
    501 U.S. 32 (1991) .............................................................................. 3, 6

*DeNardo v. Johnsone*,
    772 F. Supp. 462 (D. Alaska 1991) ...................................................... 4, 8

*DiBella v. Hopkins*,
    285 F. Supp. 2d 394 (S.D.N.Y. 2003) ...................................................... 7

*Eldred v. Ashcroft*,
    537 U.S. 186 (2003) .............................................................................. 12

*Entm't Research Grp. Inc. v. Genesis Creative Group, Inc.*,
    122 F.3d 1211 (9th Cir. 1997) ............................................................... 10

*Feist Pubs., Inc. v. Rural Tel. Svc. Co., Inc.*,
    499 U.S. 340 (1991) .............................................................................. 12

*Florentine Art Studio, Inc. v. Vedet K. Corp.*,
    891 F. Supp. 532 (C.D. Cal. 1995) ........................................................... 9

*Fogerty v. Fantasy, Inc.*,
    510 U.S. 517 (1994) ................................................................... 10, 12, 13

*Fourth Estate v. Wall-Street.com LLC*,
    139 S.Ct. 881 (2019) .................................................................... 3, 5, 8, 9

*Hicks v. Arthur*,
    891 F. Supp. 213 (E.D. Pa. 1995) ............................................................ 7

*Kirtsaeng v. John Wiley & Sons, Inc.*,
    136 S.Ct. 1979 (2016) ..................................................................... 10, 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*LCS Group v. Shire LLC*,
    383 F. Supp. 3d 274 (S.D.N.Y. 2019) ..................................................17

*Leon v. IDX Systems Corp.*,
    464 F.3d 951 (9th Cir. 2006) .......................................................14, 16

*Maljack Prods., Inc. v. GoodTimes Home Video Corp.*,
    81 F.3d 881 (9th Cir. 1996) ...............................................................10

*Pray v. M/Y No Bad Days*,
    303 Fed. Appx. 2008 (9th Cir. 2008) .................................................16

*Scott v. Meyer*,
    2010 WL 2569286 (C.D. Cal. June 21, 2010)....................................11

*Sony Corp. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ...........................................................................13

*Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang*,
    105 F.3d 521 (9th Cir. 1997) .............................................................16

*United States v. Hall*,
    19 Fed. Appx. 677 (9th Cir. 2001) ...................................................4, 8

*Warner Bros., Inc. v. Dae Rim Trading, Inc.*,
    877 F.2d 1120 (2d Cir. 1989) ............................................................10

**Statutes**

15 U.S.C. § 1051 et seq. ............................................................................13

17 U.S.C. § 101 et seq. ......................................................................*passim*

17 U.S.C. § 505...................................................................................9, 12

28 U.S.C. § 1927...............................................................................1, 3, 7

**Other Authorities**

Cal. Rules of Prof. Conduct Rule 3.3(a)(1) & (a)(2).................................5

Fed. R. Civ. P. 11..............................................................................1, 3, 8

Fed. R. Civ. P. 11(c) .........................................................................4, 8

Fed. R. Civ. P. 11(c)(2).............................................................................8

**MEMORANDUM OF POINTS AND AUTHORITIES**

1

Fed. R. Civ. P. 11(c)(3).................................................................................8

Fed. R. Civ. P. 12.................................................................................2, 4, 6

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES**

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This motion seeks a serious remedy and is not filed lightly.  Plaintiff pursued a copyright claim based on an application to the Copyright Office for a Google ad that was the subject of multiple motions to dismiss.  What the Court and Defendants did not know during all that myriad briefing that took great resources from the defendants and the Court between June 2018 and April 2019, however, was that the Copyright Office (CO) had already rejected on the merits the copyright application as early as June 2018.  But Plaintiff told nobody.  Instead, Plaintiff actively hid that merits rejection and knowingly continued to press its three copyright claims before this Court in multiple subsequent amended pleadings, motion filings, even in counsel declarations.

This information did not come to light voluntarily either.  When Defendants sought it from Plaintiff, Plaintiff flat refused to produce it, hiding its misdeeds.  Defendant had to go to the CO and seek expedited materials from the government agency, at cost to everyone, to get this information.  Only then did the curtain fall.

This conduct, both the original acts and then the attempt to hide the acts, requires terminating and monetary sanctions under the Court's inherent power; sanctions under 28 U.S.C. § 1927 and Rule 11; and fees should be awarded under the Copyright Act for the baseless copyright claim that, although eventually dismissed without prejudice due to what was then thought to be a standing issue (the certificate had not yet issued on a live pending application, all were led to believe by Plaintiff), now needs to be deemed dismissed with prejudice where Defendants are declared the prevailing party, with fees/costs to follow.

## II.   FACTS

On April 9, 2018, Plaintiff pled three copyright claims on an alleged Google advertisement based on a copyright application filed with the Copyright Office, claiming it made a March 2018 application with the CO.  Complaint ¶ 47.  After a

meet and confer to address the copyright claims' lack of specificity, a FAC was filed that was still deficient.  Dkt#17.At the time, however, Plaintiff's intentional opaqueness in identifying the actual copyrighted material, or attaching proof of application, led to a Rule 12 motion on the FAC, obviously because the idea that an advertisement has copyright protection (or that there is infringement if it does) is dubious and should be alleged fairly in a Complaint.  Dkt#18.

Unbeknownst to anyone but Plaintiff and its lawyers, the CO on June 29, 2018 rejected that specific copyright application in the advertisement on the basis that it lacked originality (despite the very low bar).  *See* Afrasiabi Decl. Exh. A. The CO sent the rejection to Plaintiff's lawyer, counsel of record here.  *Id*.

Plaintiff then on July filed an opposition to the motion to dismiss the FAC, claiming that it had a copyright.  Dkt#22.

The Court granted in part the motion and told Plaintiff to amend.  Dkt#24. Plaintiff then filed a SAC on 8/17/18 claiming copyright in the same ad.  Dkt#26 ¶ 48-49.  Another motion followed.  Dkt#28.

The Court again granted the motion and again told Plaintiff to plead properly. Dkt#31.  So, Plaintiff then filed a TAC on 11/13/18 again alleging copyright in the same ad in three claims against all defendants.  Dkt#32 47-48.  Defendant again moved to dismiss, contending the work lacked originality and a copyright claim could not lie.  Dkt#33.  Even now on its fourth complaint, Plaintiff still failed to attach relevant material the Court had ordered and only subsequently filed a notice of its alleged copyright when the Court demanded it (again) at oral argument on February 4, 2019.  Dkt#40.

In that declaration, Plaintiff's counsel again represented, now under penalty of perjury, that the copyright application was pending and wrote in the exhibit that the matter was the original expression.  Dkt#40 ¶ 3 and Exh. A at p. 6.

This Court, not aware of the agency (CO) conclusion of non-originality and conclusion that there was in fact no original expression present, allowed the

1    copyright claim to stand.  Dkt#42 p.7.

2          Then, due to the Supreme Court's *Fourth Estate v. Wall-Street.com LLC*, 139

3    S.Ct. 881 (2019), opinion rejecting copyright standing on filed applications and

4    demanding issued registrations, which issued in March 2019, Defendant asked

5    Plaintiff if the matter was pending or if an issued copyright certificate had arrived

6    from the CO, and to dismiss if it had not yet arrived.  Afrasiabi Decl. Exh. B (3/5/19

7    email).  Even there, plaintiff refused just to dismiss it as sought and tried to get

8    immunity on fees (*Id.* Exh. C 3/18/19 email and attachment), with a good faith

9    finding on the filing of its claim—the same claim it knew then had been rejected and

10   was not even pending.

11         Defendants refused such an overbroad stipulation and had to file a motion for

12   judgment on the pleadings.  Dkt#45.  Plaintiff opposed.  Dkt#46.  The Court

13   dismissed the copyright claim without prejudice under *Fourth Estate*.

14         In discovery now, Defendants asked for the application and correspondence

15   with the CO.  But Plaintiff refused to produce it.  Afrasiabi Decl. Exh. D  (Request

16   for Production 6-8 & Objections to RFP 6-8) & ¶ 5 (even after meet and confers,

17   Plaintiff still refused to produce period).

18         Defendants thus went to the CO on an expedited request to gather the

19   information.  The CO delivered its full official file, dated August 7, 2019, showing

20   the March 2018 application and June 29, 2018 rejection.  Afrasiabi Decl. Exh. A.

21         Defense counsel thrice sought to meet and confer on this motion.  All were

22   ignored.  Afrasiabi Decl. Exh E (three emails).  This motion follows.

23   **III.   INHERENT POWER TO SANCTION, 28 U.S.C. § 1927 AND RULE 11**

24         Under *Chambers v. NASCO*, *Inc*., 501 U.S. 32, 42-44 (1991), this Court has

25   the inherent power to sanction counsel and parties for litigation misconduct.  That is

26   this case.  Under Section 1927, the Court also has the power to sanction counsel.  28

27   U.S.C. § 1927.  That is this case.  Under Rule 11, the court has the power to patrol

28   the bar and sanction counsel for pleadings that advance factual or legal theories that

lack any basis.  Fed. R. Civ. P. 11(c).  That is this case.  All three bases exist her and all should be found to have been violated, because the CO rejected even the existence of a copyright in the ad in June 2018; this was not discovered until August 2019 when the CO, after request, gave its file on the copyright application at issue, lowering the curtain on what had happened in the prior year.  All roads lead to Rome here, although any road alone suffices.

### A.    The Misconduct

Here, to knowingly press on this Court and the defense a copyright claim when the Plaintiff knew the CO had rejected the ad as being even copyrightable subject matter is exactly the kind of improper vexatious behavior that justifies sanctions.  Plaintiff did not just oppose one motion to dismiss at a time the CO's mail may have inadvertently crossed with the filing (June 29 CO rejection and 7/2 first opposition to MTD FAC).  Even then, it would be improper not to alert the Court (or the defense) to the issue at some time before the Court heard oral argument and before Defendants spent money on a reply brief and oral argument preparation/attendance on that motion weeks later.  Plaintiff of course didn't do that.

Rather, Plaintiff filed a SAC on August 17, 2018, signed by counsel, claiming copyright in the ad at issue.  That was an act of affirmative misconduct that is unjustified.  The CO had by then rejected the existence of copyrightable subject matter almost 2 months prior—on the exact basis being pressed by the defense no less—and Plaintiff doubled down and filed a lawsuit again claiming copyright in that which it then long knew was not copyrightable.

And when faced with a renewed Rule 12 motion on the copyright claim, Plaintiff did not come clean and admit that there was relevant facts and law before the Court on the question—to wit, law of its case and res judicata from the CO on not just ads in general but this very ad at issue.  *See, e.g.*, *United States v. Hall*, 19 Fed. Appx. 677 (9th Cir. 2001) (final agency decision given res judicata effect); *DeNardo v. Johnsone*, 772 F. Supp. 462, 468 (D. Alaska 1991) (final agency

1  adjudications are res judicata).  That is, it's one thing on a blank record to debate the

2  extant law of copyrights in ads as applied to one's facts.  But it's another thing

3  entirely to have res judicata attach to your ad specifically as not being copyrightable

4  and fail to tell the Court of that material fact to the case and material binding law on

5  the *exact* question.  Basic legal duties are to advise of known relevant facts and law.

6  Cal. Rules of Prof. Conduct Rule 3.3(a)(1) & (a)(2) (Candor to Tribunal).   Instead,

7  Plaintiff fought to preserve its then-known-to-be-nonexistent copyright claims.

8  Dkts#22, 26, 29, 31, 32, 34, 40, 41, 47, & 48.

9      And despite this Court's warnings, Plaintiff ***again*** pled in a SAC & TAC on

10  August 17 and November 13, 2018 a copyright claim, again claiming copyright

11  ownership in the ad and claiming infringement by the defendant.  Dkt#26 & 32.  By

12  now, the CO had rejected the application five months earlier.  No appeal had ever

13  been taken.  Yet the pleading was filed again in this Court to maintain the punitive

14  leverage a copyright claim grants a plaintiff.

15      Plaintiff's counsel even represented, now under penalty of perjury in February

16  2019, that the copyright application was pending and wrote in the exhibit that the

17  matter was the original expression.  Dkt#40, Sherman Decl. ¶ 3, Exh. A at 6.  But

18  that was false and had been held as such by the CO now almost nine months earlier.

19      Plaintiff knows it has done wrong here.  It hid this from the Court and the

20  defense and insisted on this wasteful litigation campaign on known non-existent

21  copyright claims.  Then when the *Fourth Estate* decision came down, it tried to

22  secure a "good faith" stipulation and avoid fees in its proposed dismissal stipulation.

23  Afrasiabi Decl. ¶ C.  It evaded discovery on the very issue by flat refusing to

24  produce materials.  *Id.* Exh. D & ¶ 5.  It took the expedited request of the agency to

25  actually learn of this state of affairs.  That cover-up activity itself is wrong and

26  compounds the situation here.

27      This Court respectfully is asked to sanction Plaintiff and its lawyers with

28  terminating (*infra*) and financial sanctions to compensate Defendants for the

**MEMORANDUM OF POINTS AND AUTHORITIES**

1  unnecessary fees and expenses incurred fighting about an issue that should have

2  been taken off the table by the Plaintiffs before even the first hearing on the first

3  Rule 12 motion.  This multiplication of the proceedings, and the unwillingness to be

4  honest about the rejected copyright, is a threat to the integrity of the judicial process

5  and certainly impugns the fairness of the system.  The defendants cannot be asked to

6  just suffer the expenses they incurred on some theory of washing away this kind of

7  misconduct.  And the Court should properly regulate the lawyers that appear before

8  it and the bar should know that this conduct is not acceptable.

9        **B.     Inherent Power Applies**

10       *NASCO* allows the Court to use sanction powers to manage the proceedings

11  before it and control the conduct of those who appear before the Court.  501 U.S. at

12  43-44.  Plaintiff invoked this Court's federal jurisdiction under the Copyright Act

13  (rather than go to state court on its myriad state common law claims and go to state

14  court on its concurrent jurisdiction advertising claims).  It invoked this forum

15  because of the augmented expense and difficulty placed on defendants in federal vs

16  state court, and/or the in terrorem nature of being sued in federal court versus state

17  court.  It then maintained its case here even after it had been unequivocally told it

18  lacked a copyright claim by the CO, the very expert agency that is charged with

19  deciding the propriety of copyright registration applications.  This is critical because

20  it is not a case of pressing an arguable but thin claim; it is a case of pressing a claim

21  that has been affirmatively rejected by the expert agency (whose determination was

22  not then challenged) and then hiding that fact so as to maintain a contrary action in a

23  federal court, alleging three copyright claims against four defendants for nearly ten

24  further months.  The above is an abuse of the judicial process, and under *NASCO*

25  warrants sanctions and fees/costs both against the party and counsel (even absent a

26  basis for fees in the underlying substantive law).  *Id.* at 45.

27

28

## C.    Section 1927 Applies

Section 1927 provides for sanctions where the misconduct has unreasonably and vexatiously multiplied the proceedings, especially where the facts and law as framed simply could never have stood.  That is what happened here as outlined above, (1) from failing to tell the Court or defense of the CO's rejection immediately, (2) from filing new complaints (SAC and TAC) as if there was still a pending CO application when it had been rejected and alleging that plaintiff authored an original work as pending in an application (SAC ¶ 48-49, TAC ¶ 47-48) when that was false—it had already been rejected so the allegation that a pending, possibly-viable copyright existed was itself false and the allegation of copyright authorship of anything was false, (3) from opposing motions to dismiss by arguing copyrightable subject matter when the law of the case/res judicata principles already indicated that this ad lacked copyrightable subject matter and so could not be pressed in a pleading on people (meaning there are misrepresentations of fact and law here), (4) to hiding the misconduct behind discovery objections, (5) to seeking to evade any exposure by seeking a "good faith" stipulation as a quid pro quo to dismiss the copyright claims, and (6) to even filing a declaration under penalty of perjury asserting a pending copyright application existed and contending original expression existed in the ad—the same original material that almost 7 months earlier had been deemed to not be original and not inhabit copyright law by the agency. This is classic Section 1927 material.  *See, e.g.*, *Alvarado-Morales v. Digital Equip. Corp.,* 843 F.2d 6513 (1st Cir. 1988) (failure to withdraw a complaint when facts mad eclair claim could not stand are basis for sanctions); *Beam v. IPCO Corp.*, 838 F.2d 242 (7th Cir. 1988) (misrepresentations of controlling law that causes delay and multiples proceedings a basis for sanctions); *DiBella v. Hopkins*, 285 F. Supp. 2d 394 (S.D.N.Y. 2003) (factual misrepresentations by redacting records to alter factual record justified sanctions); *Hicks v. Arthur*, 891 F. Supp. 213 (E.D. Pa. 1995) (overpleading a complaint can be basis).  Sanctions should follow.

**MEMORANDUM OF POINTS AND AUTHORITIES**

### D.    Rule 11 Applies

Rule 11 requires counsel not to sign pleadings with known false statements in them.  Fed. R. Civ. P. 11(c).  Here, the CO rejected the existence of a copyright in the ad in June 2018.  *See* Afrasiabi Decl., Exh. A.  Yet multiple complaints were then filed in August and November alleging not just a generic copyright claim, but specifically that this application was pending, and that the ad had original copyright-eligible, Plaintiff-authored subject matter in it.  (SAC ¶ 48-49, TAC ¶ 47-48).  But those allegations and statements were false in fact: there was no pending application as of June 29, 2018—the application had by then been rejected.  Thus, the copyright claim could not be re-pled in the SAC or TAC in good faith by any stretch as a matter of fact.  At the same time, the same arguments were strenuously made in pleadings and open court to justify the existence of this copyright claim.  Dkt#22, 26, 29, 31, 32, 34, 40, 41, 47, & 48.  Those, too, could not be signed and filed (pleadings) in good faith.  Nor could the allegations be maintained as a matter of law in good faith given the CO's rejection, it was final (certainly when not challenged) and so res judicata attached.  Plaintiff could not offensively plead a copyright in an ad that the CO – the expert agency in the first instance – has declared lacks copyright subject matter.  That CO determination is binding on res judicata grounds. *See supra (Hall*, *DeNardo)*.  Preclusion aside, basic standing did not exist for the SAC or TAC: whether under the new or old standard (application or issued certificate, *see Fourth Estate*), at a minimum an actual application was required and as of June 29, 2018 even that no longer existed.  Rule 11 also then requires sanctions here, and any safe harbor requirement under Rule 11(c)(2) must be waived because there are no pleadings left given the chicanery to even give counsel a chance to amend.  (Alternatively, the Court's inherent power under Rule 11(c)(3) has no 21-day requirement as in (b)(2) and should be exercised here.)

Finally, Plaintiff has elected to demand litigation, has refused multiple requests to seek resolution to a case that by all outward appearances just reading the

8

pleadings is not really a situation suited for massive litigation, and is adamant about proceeding in litigation no matter what.  Afrasiabi Decl. ¶ 7.  A party of course has the right to never want to talk settlement; but in the context of pressing knowingly non-existence fake claims, the behavior is necessarily indicative of a desire to punish and financially bludgeon the new start competitor, which is a motive that in these circumstances is ill and earns appropriate sanction.

## IV.  THE DISMISSAL OF THE COPYRIGHT CLAIM WIHOUT PREJUDICE SHOULD BE CONVERTED TO WITH PREJUDICE AND FEES SHOULD BE AWARDED

### A.  Dismissal with Prejudice

The extant dismissal without prejudice was premised on the idea that the copyright application as still percolating and had not yet issued and so, under the then-new decision of *Fourth Estate* there was technically not standing.  Despite fighting over just agreeing to dismiss instead of just dismissing, this Court, on a motion for judgment on the pleadings that Defendants then had to file, dismissed the claim without prejudice.  Dkt#52.  Given the CO's rejection of the application, hidden from the defense and the Court, the Court should now convert the dismissal of the copyright claim to one with prejudice.  Had the Court been told the true facts, the dismissal would certainly have been with prejudice at the time.  Plaintiff cannot commit what is a fraud on the court and defense and then benefit by it.

### B.  Defendants Prevailed

Section 505 of Title 17 awards prevailing copyright defendants their fees and costs.  17 U.S.C. § 505.  Here, there can be no doubt that Defendants prevailed.  The CO claim lacked any merit whatsoever, was adjudicated as such by the CO, and that fact was then hidden from this Court by the Defendants.  "Under the Copyright Act, the 'prevailing party is one who succeeds on a significant issue in the litigation that achieves some of the benefits the party sought in bringing [or defending] suit.'" *Florentine Art Studio, Inc. v. Vedet K. Corp*., 891 F. Supp. 532, 541 (C.D. Cal.

1995) (quoting *Warner Bros., Inc. v. Dae Rim Trading, Inc.*, 877 F.2d 1120, 1126 (2d Cir. 1989)).  This descends from the Supreme Court's repeat stated principles. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 136 S.Ct. 1979 (2016); *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) (discretion in factors, case by case approach).

One overarching principle is that "a court may not treat prevailing plaintiffs and prevailing defendants any differently; defendants should be 'encouraged to litigate [meritorious copyright defenses] to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement.'"  *Fogerty*, 510 U.S. at 527; *Kirtsaeng*, 136 S.Ct. at 1985 (same).

As set forth below, the non-exclusive factors identified by the Ninth Circuit: (1) the degree of success obtained by Defendants; (2) the objective reasonableness of Plaintiff's factual and legal arguments; (3) Plaintiff's motivation; and (4) the need for compensation and deterrence—support the conclusion that Defendants should be awarded the attorney's fees and costs it incurred in defending itself against Plaintiff's claim for copyright infringement.  *Entm't Research Grp. Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1229 (9th Cir. 1997).

### 1.    Degree of Success Obtained

Defendants successfully demonstrated that there was no copyrightable subject matter in a Google ad.  Accordingly, Defendants' success in this action was total and complete.  *See Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 890 (9th Cir. 1996) (finding award of attorney's fees proper where defendant, for which summary judgment was granted, "obtained total success in defending against [plaintiff's] copyright claims.").

### 2.    Objective Unreasonableness

Plaintiff's pursuit of its copyright infringement claim was objectively unreasonable because the facts showed that it lacked a copyright as of June 29, 2018.  Given that ruling by the CO, not challenged by Plaintiff, Plaintiff's

1  subsequent pursuit of the copyright claim was objectively unreasonable, indeed

2  outright frivolous.

3  **3.    Motivation**

4  Plaintiff s improper motivation is chiefly demonstrated by the disparity

5  between the CO's ruling and the facts then pled in this Court.

6  It is further highlighted by the vitriol with which the claim was pursued:

7  despite repeat requests to talk about the case and find a resolution given the thin

8  copyright issues, Plaintiff opted to have no discourse at all.  Afrasiabi Decl. ¶ 7.

9  Defendants are non-native English speakers and were obviously petrified to

10  be sued in federal court, as any defendant is.  Plaintiff knew that, given their

11  historical relationship, and knew that Defendants were a start-up with limited

12  resources and so chose to bludgeon the Defendants in federal court, imposing the

13  shock and awe factor that federal court litigation imposes on people as well as the

14  always higher rates that are borne by federal defendants rather than state ones,

15  especially given the specialized intellectual property arena (in lieu of a state action

16  on the oral noncompete and fraud, traditional state claims that myriad general non-

17  specialized lawyers litigate).

18  **4.    Compensation and Deterrence**

19  Plaintiff s decision to file and pursue this lawsuit was in disregard for the

20  substantial expense that Plaintiff certainly knew would be incurred by Defendants in

21  defending the unwarranted copyright claim.  "Deterring non-meritorious lawsuits

22  against defendants seen as having 'deep pockets' and compensating parties that

23  must defend themselves against meritless claims are both laudable ends." *Scott v.*

24  *Meyer*, 2010 WL 2569286, at *3 (C.D. Cal. June 21, 2010). Without any financial

25  consequences, there is nothing to discourage Plaintiff or others from similar misuse

26  of the court system in the future. Indeed, in the absence of an award of fees and

27  costs, Plaintiff will suffer no consequence—and Defendants will have been

28  penalized to the tune of nearly one million dollars—as a result of Plaintiff's decision

**MEMORANDUM OF POINTS AND AUTHORITIES**

1  to file and pursue this unreasonable lawsuit without attempting to abide by the CO's
2  "meritless" determination.  Thus, this factor weighs heavily in favor of a fee award.

3  **5.  A Fee Award Furthers the Interests of the Copyright Act**

4  The purpose of copyright protection is "to promote the creation and
5  publication of free expression." *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003); *see*
6  *also Feist Pubs., Inc. v. Rural Tel. Svc. Co., Inc*., 499 U.S. 340, 344-45 (1991).  As
7  *Fogerty* explained, "copyright law ultimately serves the purpose of enriching the
8  general public through access to creative works."  510 U.S. at 527.  And the
9  copyright statute achieves that end by striking a balance between two subsidiary
10  aims: encouraging and rewarding authors' creations while also enabling others to
11  build on that work.  *Fogerty*, 510 U.S. at 526.  Thus, as held recently by the
12  Supreme Court: "Accordingly, fee awards under § 505 should encourage the types
13  of lawsuits that promote those purposes.  (That is why, example, *Fogerty* insisted on
14  treating prevailing plaintiffs and prevailing defendants alike—because the one could
15  "further the policies of the Copyright Act every bit as much as" the other."  136
16  S.Ct. at 1986.

17  Plaintiff's case, had it succeeded in covering up the CO's non-copyright
18  determination, could have led to and stifled the rampant and creative free expression
19  by Defendants, and even millions of others in their advertising efforts.  Even if the
20  matter were later rejected by a jury or judge at summary judgment, there still is
21  staggering chilling effect on the free expression rights of Defendants to create and
22  use ads in commerce.

23  The Copyright Act is a brutal weapon with devastating remedies.  Strict
24  liability, and devoid of showing consumer consciousness or confusion (*contra*
25  Lanham Act's difficult consumer confusion standard), a party can prevail simply by
26  showing substantial similarity: are the two ads similar?  If the jury says yes, then the
27  jury can literally destroy the defendants' lives and business by concluding that the
28  use of the ad was thus unlawful and give the defendants' profits to the plaintiff or

the plaintiff's lost sales to it.  Copyright allows this happen irrespective of whether the ad was a draw to the consumer, and irrespective of whether the consumer thought the defendants' ad was associated with plaintiff or was really the plaintiff's work.  That overarching nature of copyright alone has staggering legal and financial consequences, and is why it is such a potent tool in the litigation arsenal.  In contrast, the Lanham Act will only allow a defendant to prevail where true consumer confusion is shown—not that the marks are similar but that consumers were in fact misled by a similarity—and then the far more stringent causation standards.  That is why copyright has such an in terrorem effect, and that is also why it cannot be sanctioned to be used unlawfully as was done here—indeed, here Plaintiff fought to keep the in terrorem effect of three copyright claims over all the Defendants' heads even when it knew the CO rejected the copyright precisely because the claim mattered a lot to Plaintiff's leverage to bludgeon the defendants.

Indeed, the Ninth Circuit has acknowledged that a successful defense of a copyright infringement action "may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright." *Fogerty*, 94 F.3d at 559.  The Ninth Circuit has further recognized that one of the purposes of the Copyright Act is "to encourage defendants who seek to advance a variety of meritorious copyright defenses to litigate them to the same extent that plaintiffs are encouraged to litigate meritorious claims of infringement." *Id*. at 557-58 (internal quotations and citation omitted).  To allow such meritless claims to linger would undermine the Copyright Act's goal of promoting "society's . . . interest in the free flow of ideas, information and commerce."  *Sony Corp. v. Universal City Studios, Inc*., 464 U.S. 417, 429 (1984).  Fees, thus, should follow.

### 6.    Other factors

As noted above, the factors are non-exhaustive.  This Court should also engraft into its factors the bases for sanctions above.  A party simply cannot use the Copyright Act is such an ill manner because advancing known bogus copyright

**MEMORANDUM OF POINTS AND AUTHORITIES**

1  claims never serves the Copyright Act's (1) balance between incenting creativity

2  and building on others' works, (2) its grant of jurisdiction to federal courts to

3  adjudicate actual non-bogus controversies, or (3) its overarching structure of

4  statutory damages and the substantial similarity test.  The Copyright Act itself, by

5  structure and definition, demands a basic level of adherence to its precepts before it

6  is invoked to sue someone.  This Court in practical effect is the only body able to

7  patrol its use in any given case such as this one.

8  **V.    TERMINATING SANCTIONS SHOULD ISSUE**

9         The Court has inherent power to impose terminating sanctions "when a party

10 has engaged deliberately in deceptive practices that undermine the integrity of

11 judicial proceedings" because this power permits dismissal "when a party has

12 willfully deceived the court and engaged in conduct utterly inconsistent with the

13 orderly administration of justice."  *Leon v. IDX Systems Corp.*, 464 F.3d 951, 958

14 (9th Cir. 2006) (five-factor test using inherent power for terminating sanctions

15 issues).

16        This case has been litigated improperly in more respects than just the

17 copyright issues here (*infra*), although those alone justify simply dismissing the

18 entire action with prejudice as a terminating sanction.  The courts and judicial

19 jurisdiction should not be used as a waterboarding instrument where illegal tactics

20 can just be employed willy-nilly.  As shown above, this case involves exactly the

21 *Leon* admonition regarding deceptive practices undermining the integrity of the

22 judicial process where there is willful deception of the court.  Willfulness, fault and

23 bad faith all exist here.  *Id.*

24        *Leon's* five factors all militate in favor of terminating sanctions:

25        First, the public has an interest in expeditious litigation, but this case has been

26 present now for over a year as multiple false copyright claims have been pushed on

27 the court and parties in complaints, opposition briefs and even within counsel

28 declarations.  At the same time, not a single piece of paper has even been produced

by the Plaintiff in this litigation where it invoked the Court's jurisdiction.  Not one.  No initial disclosure documents.  No responsive RFP documents despite months of demanding them and months of promises they are forthcoming.  *See* Afrasiabi Decl. ¶ 8 & Exh. G (emails repeatedly requesting the promised-to-be-produced documents).  Plaintiff chose this strategy, and then chose to hide its misconduct so as to continue hold the copyrights claims over the Defendants and force them to settle with them in mind or go to the massively expensive MSJ route to try to get out (as well as having to litigate endlessly just to get documents), and it should pay the price for not litigating properly.

Second, the court's need to manage its docket tilts the same way: why should this plaintiff receive federal court solicitude and attention, repeatedly, for its "claims' where other parties proceed honestly and diligently, especially where when asked for the CO information it adopted further obfuscation tactics?  The quid pro quo for judicial attention must be a base level of integrity back.

Third, there is no prejudice; the entire gravamen of the suit is copyright as alleged and it was an entirely false undertaking; and the remaining "trademark" claims are facially thin (one ad for a few days to justify federal litigation where there is no possibility of confusion given the complete difference in names of the parties and their products, even if a consumer clicked on the defendant's self-named/identified ad), as is the idea that there is an oral noncompete between roommates in a home living situation.  Plaintiff's remedial issues, if any, lie elsewhere at this point, not at Defendants.

Fourth, the merits were fabricated for a long time to burden a party, using the Court and federal jurisdiction to that end; any public policy interest in merits' resolution for a plaintiff on secondary claims who went to these lengths on the main claims would be to put the cart before the horse and bless misconduct.

Fifth, while only issuing a monetary award is less draconian, it is always the case that there are less draconian remedies.  The real issue is how can it be that

15

1  parties can engage in this behavior and simply be told to pay some money.  Money
2  does not cure this kind of systemic ill, the same way a robber cannot just return the
3  stolen property and get a free pass and the same way we don't just have our kids put
4  cookies back in the jar when caught cookie in hand.

5       Accordingly, terminating sanctions within the Court's inherent power should
6  attach.  *Id.; see also Stars' Desert Inn Hotel & Country Club, Inc. v. Hwang,* 105
7  F.3d 521, 525 (9th Cir. 1997); *Pray v. M/Y No Bad Days*, 303 Fed. Appx. 2008 (9th
8  Cir. 2008) ("Willful disobedience of a court order may justify terminating
9  sanctions.").  Indeed, this case transcends a willful disobedience of a court order; it
10 involves willful secreting away of CO rulings so as to perpetrate a fake claim,
11 unhindered by its factual falseness, in an action on Defendants and the Court, the
12 complete functional equivalent of willful spoliation of evidence so as to avoid a
13 claim or loss of a claim.

14      But more exists to show the improper nature of the Plaintiff's tack in this
15 Court, all of which folds into the analysis within *Leon.*

16      First, it has refused to even try to have a settlement discourse and instead
17 opted for bludgeoning federal litigation.  Afrasiabi Decl. ¶ 7.  Now it's one thing to
18 want to litigate and even refuse to talk settlement; but it's another to do that when
19 one is to press knowingly false claims to bludgeon an upstart competitor.  Using
20 litigation to destroy nascent competition should be jealously guarded by the courts.
21 Fake claims on fake facts cannot be a springboard for such actions.  No explanation
22 for this situation exists other than that Plaintiffs believed they could destroy the
23 upstart competitor, still operating out of its home to try to survive.

24      Second, there has been a constant unwillingness to even follow the rules—the
25 meet and confer history on the MTD the pleadings all demonstrated constant
26 refusals to meet and confer, ignoring requests, followed by claims that the
27 defendants refused to meet and confer.  The documentary evidence given the court
28 on the motions' declarations shows unequivocally that Plaintiffs just chose to ignore

16
**MEMORANDUM OF POINTS AND AUTHORITIES**

basic rules and then have the chutzpah to blame the defendants.  Despite being told to attach the actual alleged copyright application to a pleading repeatedly by the Court, they still refused to do so.  We urge the court to revisit those declarations in the motions.

Third, even now, despite promising to produce documents for the last three months, not a single piece of paper has been produced and the undersigned has had to threaten repeatedly motions to compel and now draft them to try to get compliance, which as it stands is still being told that documents are forthcoming. Afrasiabi Decl. ¶ 8.

Fourth, at the same time, Plaintiff, having not produced one piece of paper in a case over a year old, served a depo notice out of the blue at midnight demanding a deposition one week later.  *Id.*  This is simply a pattern of abusive litigation gamesmanship that should be called for what it is.

Terminating sanctions are understandably rare.  But this case must surely be a rare case in the Court's annals in terms of the sheer indifference to the facts and law, coupled with hyper-aggressive lawyering (lest there be a legitimate crisis in CD Cal in terms of lawyering).

## VI.  FEES AND COSTS AWARDS SHOULD ALSO ISSUE

Lodestar amounts are appropriate in this context, especially where there is a need to deter and corral compliance with basic litigation norms.  *See LCS Group v. Shire LLC*, 383 F. Supp. 3d 274 (S.D.N.Y. 2019).

The undersigned firm expended 196.4 hours in the motions to dismiss and then discovery process that culminated in the agency process to get the relevant CO material.  Afrasiabi Decl. ¶ 10-11.  Defendant's lead counsel's customary billing rate is $550.  That is a rate for IP litigation well within the norm for lawyers of the undersigned's background and experience, as this Court certainly knows from fee motions it sees.  Afrasiabi Decl. ¶ 9.  And the hours are certainly highly reasonable. This number does not include September 2019.  *Id.* ¶ 11.

**MEMORANDUM OF POINTS AND AUTHORITIES**

Out of concern of this small group of defendants who do not even speak English with extreme fluency and who are under immense pressure in what facially appears an overly aggressive suit, the undersigned has not billed vast amounts of his time and acted to help the Defendants to try to allow the Defendants simply to survive the destruction of being sued in federal court.  That should not inure to Plaintiff's benefit, and those hours should be added.  Afrasiabi Decl. ¶ 10.

The fees and costs/expenses associated with the action amount to $51,722.80 and are identified in more detail in the Declaration of Afrasiabi.  *Id.* ¶ 9-12.

Defendants lack the ability to quantify any additional sanctions payable to the Central District to compensate it for the wasted judicial, court staff, and law clerk time and taxpayer money (not to mention the CO that graciously did this expedited request at no additional charge), and other relevant court-centric issues, and so leave that to the Court to decide.

## VII.  CONCLUSION

This case justifies the remedy of terminating sanctions.  It also justifies a fee award as sanctions, as well as an adjudication of prevailing party status in the copyright claims and a Copyright Act fee award also.

Dated: September 30, 2019          **ONE LLP**


                                   By: /s/ Peter R. Afrasiabi
                                       Peter R. Afrasiabi
                                       Attorney for Defendants,
                                       Woo Signatures, LLC, Tadeh
                                       Booghosianssardabi, Farshid Karamzad
                                       Goffsaz, and Arash Sedighi

18

**MEMORANDUM OF POINTS AND AUTHORITIES**