Peter R. Afrasiabi (SBN 193336)
pafrasiabi@onellp.com
Samareh J. Afrasiabi (SBN 330369)
safrasiabi@onellp.com
**ONE LLP**
23 Corporate Plaza
Suite 150-105
Newport Beach, CA  92660
Telephone: (949) 502-2870
Facsimile: (949) 258-5081

Attorneys for Defendants,
WOO SIGNATURES, LLC, TADEH
BOOGHOSIANSSARDABI, FARSHID
KARAMZAD GOFLSAZ, and ARASH SEDIGHI

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| BOOST BEAUTY, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>WOO SIGNATURES, LLC, a California limited liability company; TADEH BOOGHOSIANSSARDABI, an individual; FARSHID KARAMZAD GOFLSAZ, an individual; ARASH SEDIGHI, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>AND RELATED COUNTERCLAIMS. | Case No. 2:18-cv-02960-CAS-E<br>Hon. Christina A. Snyder<br><br>**WOO SIGNATURES, LLC'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:            February 7, 2022<br>Time:            10:00 am<br>Location:     Courtroom 8D |

## TABLE OF CONTENTS

I. A FINAL JUDGMENT SHOULD ISSUE ...................................................... 2

II. THE LATE-FILED ARGUMENTS ARE MERITLESS ................................ 4
    A.    Contract-Fraud claims. ......................................................................... 4
    B.    Trademark Claims ................................................................................ 5
    C.    The causation problem is ignored ........................................................ 8
    D.    An Unclean Hands Summary Judgment Should Issue .......................... 9

III. THE THROW AWAY ARGUMENTS MAKE NO SENSE ......................... 10

IV. PLAINTIFF'S INTERPRETATION OF THE GOOGLE DOCUMENT IS A KNOWING FRAUD AND HAS NO FACTUAL BASIS ............................ 12

V. SHAM DECLARATIONS AND ARGUMENTS .......................................... 13

VI. CONCLUSION ................................................................................................ 14

# TABLE OF AUTHORITIES

**Cases**

*Cheseborough-Pond's, Inc. v. Faberge, Inc.*,
  666 F.3d 393 (9th Cir. 1982) ................................................................................ 8

*Davidson v. Welch*,
  270 Cal. App. 2d 220 (1969) ................................................................................ 9

*Foley v. Interactive Date Corp.*,
  47 Cal. 3d 654 (1988) ..................................................................................... 4, 5

*Interstellar Starship Serv., Ltd. v. Epix, Inc.*,
  184 F.3d 1107 (9th Cir. 1999) ...................................................................... 5, 6, 7

*Najera v. S. Pac. Co.*,
  191 Cal. App. 2d 634 ........................................................................................... 9

*Trouble v. Wet Seal*,
  179 F. Supp. 2d 291 (SDNY 2001) ...................................................................... 8

*Yeager v. Bowlin*,
  693 F.3d 1076 (9th Cir. 2012) ............................................................................ 13

**Statutes**

Lanham Act ............................................................................................................ 8

**WOO SIGNATURES' REPLY ISO MOTION FOR SUMMARY JUDGMENT**

## I. A FINAL JUDGMENT SHOULD ISSUE

This Court has long noted the thin nature of this case. The (late) Opposition literally sums up the need to end this case when it admits that the act of selling the same product is not unlawful: "Furthermore, the idea to sell a certain product in the market is not anything that can be protected to the exclusion others." (Opp. at 18:14-15). Just so. And this concession really crystallizes the absurdity of plaintiff's tack in this litigation, a legally confused case that the Court has itself noted before. To be sure, the plaintiff contends it's acceptable for plaintiff to sell the same product under a different name as its prior employer even when still working for them (boostlash to idollash), but it's illegal for defendants to sell the product under a different name to the plaintiff (woolash to bosstlash). Trademark law cannot absolve this fundamental break in the very theory of plaintiff's case. Respectfully, this Court should end this wasteful, meritless case.

As this Court said at the last hearing, echoing its prior comments over the years:

> All right. Well, let me say this. I'm a broken record on the subject. But this case really must settle. I really have over the years failed to understand really the legal basis for the dispute. I understand that there is a personal basis for the dispute. But everyone is going to have to get over it because I cannot imagine the jury is going to award substantial damages even if it finds liability for some reason or another.

12/13/21 Tr. at 5:4-11.

After that last hearing and this Court's serious comments, Defendants specifically ordered and paid for that hearing's transcript. Defendants' principals directly sent it to the Plaintiff's principals so they could know what this Court said (assuming counsel may not share the comments since he never ordered the

transcript) to just let them know that this case had to be brought to an end for everyone's sake by rationality, hoping that seeing this Court's own words at this point may help bring rationality to bear so everyone could just go back to their lives. *See* Reply Afrasiabi Decl. Exh A. But Plaintiff ignored the email and request entirely, and Plaintiff's lawyer never followed up either after the last settlement status hearing, necessitating this expensive motion to adjudicate this case.

At this point, enough is enough. Plaintiff has chosen to demand this suit reach this point. Defendants raised the issue at the last hearing of the looming MSJ deadline. Plaintiff chose not to try to just end the case, necessitating great expense and time to put this before the Court. The detailed motion, evidence and declarations all make clear that there are no viable legal and factual claims for trial. The opposition confirms the need for summary judgment and the end of Plaintiff's action (since as the motion notes the other claims have already been dismissed).

To facilitate finality in this process and just bring this massively expensive situation to an end and avoid an expensive fees' trial on the remaining counterclaims, Defendants will, subsequent to any summary judgment order disposing of the rest of Plaintiff's suit, then dismiss their counterclaims without prejudice[1]; that will allow entry of a Final Judgment, and if Plaintiff really believes that summary judgment should not have issued on its claims on this record, then it can appeal to the Ninth Circuit (or not and let everyone just go back to their respective lives and businesses). Defendants are more than happy to defend this issue before the Ninth Circuit to achieve final, final finality (or to just have finality at this point given the sheer fee expenditures).

---

[1] This is not because Defendants' counterclaim lack merit; they do not, as Plaintiff stole the SIM card and hacked private communications which is factually indisputable (and indeed undisputed on this record no less) and also established by uncontroverted expert testimony as the MSJ makes clear. Defendants, however, to simply save money after the Plaintiff's action is terminated, will voluntarily walk away from their claims without prejudice. If the Ninth Circuit were to somehow reverse, then Defendants would reinstate their counterclaims. But at this point, it simply saves money to end this litigation. Of course, if any of Plaintiff's clams survive for trial, then Defendants will not at all dismiss any of their claims.

## II. THE LATE-FILED ARGUMENTS ARE MERITLESS

Procedurally, the opposition/SOGI is late and should be stricken. Late Friday night on the 21st, the business day before a Reply was due, opposition documents were filed, a week late (despite the motion having been filed and set out beyond the required time out of professional courtesy to afford Plaintiff more time and not burden him over the Holidays, even though the undersigned was forced to file on the 27th of December), and without even a courtesy notice to the undersigned. claiming error in filing, Plaintiff's counsel never reached out a week ago to say this issue had arisen and that he needed more time; rather, he stayed silent and then just filed the documents late Friday night. The Court should strike them given these facts.

On the merits, the arguments all fail and summary judgment should issue.

### A. Contract-Fraud claims.

The Opposition brief claims that the alleged agreement was not a non-compete and was instead only a confidentiality one. (Opp. at 8:7-13). Not so. The undisputed facts offered showed the testimony that it was both (SOU1) as does the plaintiff's own TAC no less (¶ 40). And even the Yasha Declaration offered in opposition again confirms that it was both a confidentiality and non-use agreement. Dkt#117-1 ¶ 12. Both oral forms are subject to the SOF and hence unenforceable as the law shows (which MSJ law was not addressed in opposition either).

Plaintiff claims that the contract was capable of performance within a year and so not subject to the statute of frauds. (Opp. at 8). But this theoretical exercise has no basis in the facts of this record where Plaintiff claimed the contract was still in effect years later (SOU1) and so the contract-at-issue here was not the theoretically termed one discussed in opposition. That is, Plaintiff here did not allege a confidentiality/noncompete of less than a year, but instead has sued on one that lasts over a year (and still is in effect today by Plaintiff's testimony). SOU1.

*Foley v. Interactive Date Corp.*, 47 Cal. 3d 654, 672 (1988), is completely inapposite. There, the Court specifically notes that in employment contracts where

there is "a reasonable expectation of employment for more than one year (in which case the statute of frauds ***does apply, barring this action***)." *Id.* at 672 (emphasis added). Thus, an oral employment agreement with a terminating condition—not at issue here—where one can be terminated within a year is not subject to the statute of frauds. But the oral agreement here had no such terminating provisions capable of happening within a year; to the complete contrary, it was a permanent oral promise to not do something that was sued on and is still in effect by plaintiff's own testimony (SOU1), and that is exactly within the statute of frauds.

In the moving papers, Defendants cited myriad cases on point for application of the SOF to these oral confidentiality/non competes. All were ignored.

As to fraud, Plaintiff claims that its fraud claim does not hinge on needing a fiduciary duty because only concealment fraud requires that. Not so. It is precisely as explained in the MSJ law (*Tenzer*) that when one wants to use fraud to get around the statute of frauds on a permanent confidentiality/non-compete, the narrow basis to allow such a claim is one that is tethered to fiduciary duties. And again Plaintiff ignores the other bases for summary judgment advanced: (1) fraud exception to SOF does not apply where these kinds of business damages are sought (MSJ at 7:7-20); and (2) nothing secret was taken so even if there is an oral promise not to use the secrets, it was not breached (MSJ at 6:7-20) given the facts (SOU42-46).

**B.     Trademark Claims**

As the cases in the moving papers made clear, any initial interest in this context is immediately dispelled since the products and websites are different and since the plaintiff's own advertising is not to its website/brand/mark, but to a fake review website. MSJ at 18 § C. Those cases were all entirely ignored and end this case. And Plaintiff admits the websites are different. Opp. at 14:19-22.

Plaintiff instead relies on one case, *Interstellar Starship Serv., Ltd. v. Epix, Inc.*, 184 F.3d 1107 (9th Cir. 1999), which Plaintiff meritlessly tries to shoehorn itself into. In *Interstellar*, the Ninth Circuit addressed the then-new domain name

infringement cases where one registered a domain name with a trademark—notably, not the kind of analysis at issue here—and it reversed a *Sleekcraft* analysis in a where a district court had concluded that epix.com did infringe epix.

There, the Ninth Circuit found the two marks at issue were literally identical and so that counseled against a non-infringement finding: epix and epix.com. *Id.* at 1110. Fair enough, after all the marks were <u>identical</u>. But this case involves Woolash and Boostlash, two words that are not remotely identical, and so that cuts exactly the other way and counsels for noninfringement.

There, the Ninth Circuit also noted that the *Sleekcraft* factor the district court below got right was that the purchasers were sophisticated and so they can find what they are looking for and so that cuts in favor of non-infringement. And that is this case too, which facts and law were cited in the moving papers and ignored in opposition. MSJ at 15. This factor supports noninfringement as a matter of law.

There, on intent epix.com chose the word epix knowing about epix in order to capitalize on epix. *Id..* at 1111. But here Woolash does not capitalize on Boostlash, they are different words and marks with different meanings. When epix.com knew of the epix mark and chose the identical word (but for the legally irrelevant .com ending), that showed intent. But here there is no such comparable case as knowing of Boostlash has no bearing on selecting Woolash as a mark and shows no intent whatsoever. That is, this is not a case where, knowing of the brand Boostlash at www.boostlash.com, defendant named its product at www.boostlash.net. Rather, the entirely different names fundamentally, with the other factors above, makes this a different case to *Interstellar* that goes the other way. And Defendants' knowledge of a similar business is, as Defendants state in their opposition as quoted in the outset here, not improper or unlawful at all—just as Boostlash say they could know of Idollash and make their own product with a different name, so too can Woolash.

In *Interstellar*, on consumer confusion there was actual evidence that people who searched for epix were then led to the identical mark at epix.com. But this case

1 has no such similar evidence that anyone ever searched for boostlash and were
2 diverted to a boostlash.com site really owned by woolash.com or a woolash owned-
3 site with "boostlash" on it. Instead, the evidence is that the woolash site never has
4 the word boostlash on it anywhere (in the url or elsewhere). SOU16. And woolash is
5 the searched and sought term with value, not boostlash! SOU29, 49. And the few
6 instances of a keyword search for boost or lash, or boostlash, did not even lead to
7 any confused consumers or sales, as the businesses are entirely distinct and different
8 with different websites and pages and different named products. And the one month
9 drop in sales in February 2018 after Defendants started was due to **Google's**
10 behavior shutting down Plaintiff's site, not defendant. SOU20. If one searches for
11 Nike and up comes nike.net which they go to, they can fairly initially believe it is a
12 Nike site. But if one searches for Nike and Adidas comes up, and they go to
13 adidas.com there is no initial interest when they land on the adidas.com site where
14 they are buying expensive products that are obviously unrelated to their search term.

15       And, finally, as the undisputed expert testimony makes clear, this keyword
16 usage for obviously different products/brands/websites is absolutely industry
17 standard and normal. SOU30-31. It is simply not the domain name squatting
18 poaching scenario of *Interstellar*. Thus, the initial interest ideas in *Interstellar* are
19 not relevant here precisely because this is not a case of the identical mark in a
20 domain name that instantly appears to be related to the rightsholder. This case, like
21 the recent ones, makes clear that the very doctrine has limited viability and force in
22 this specific context of discerning consumers confronting different names and
23 brands on different sites where nothing appears in ad copy that consumers see. The
24 very law cited for this in the moving papers was again entirely ignored, and that law
25 controls the outcome and inquiry here. A consumer searching for epix and seeing
26 epix.com could obviously think it was at the searched-for "epix" site; no one
27 searching for boostlash and seeing woolash (or any other non-bosstlash eye product)
28 would think that woolash is the same as boostlash. Ultimately, *Interstellar* is

1  inapposite.

2  <u>Experts</u>: The claim that the expert reports are invalid is meritless. Likelihood
3  of confusion and secondary meaning are quintessential issues assessed by experts in
4  the technical keyword space. Plaintiff cites *Trouble v. Wet Seal*, 179 F. Supp. 2d
5  291, 303 (SDNY 2001) and *Cheseborough-Pond's, Inc. v. Faberge, Inc.*, 666 F.3d
6  393, 398 (9th Cir. 1982), to justify its claim, but those cases are entirely inapposite.

7  *Cheseborough-Pond's* involved the question of the similarity or dissimilarity
8  of the words. While that is at issue here, it is argued as matter of law aside from
9  expert facts that the Court can absolutely address as a matter of law; that is, the
10  expert report only supplements what is common sense: the words mean what they
11  mean and the words here are descriptive as demonstrated by the law outlined and
12  ignored) at MSJ § IV.A and the unavoidable basic facts (SOU9-10, 4, 5, 19, 26-28).

13  *Trouble* is no different. There, the expert had no basis to opine on similarities
14  or confusion given the absence of relevant experience. Here, the defense expert is an
15  SEO and online advertising expert – the exact issue at issue. Here, the core expert
16  testimony is quintessential expert testimony: the industry nature and standard of
17  how keywords are used, how keywords were used here, and from analyzing the data
18  behind searches and websites what consumers were searching for and looking at
19  brand wise—all based on SEO and data analytics done by SEO marketing experts
20  using the industry search and analysis tools they use to quantify data from searches.

21  **C.     The causation problem is ignored**

22  A central basis for the dismissal of this case is the causation argument
23  advanced. MSJ § IV.E. It was ignored. The absence of the requisite evidence to
24  sustain the but for causation requirements of Ninth Circuit law is simply fatal. This
25  is no small matter: one cannot claim that revenues went down after a competitor
26  started business and go to a jury with that fact to support a damages claim. That is
27  not legal causation at all, and this is why the law on causation in the Lanham Act is

28

so important: losses have to be tied not to the existence of a competitor but to actual consumer confusion-related sales diversions.

### D. An Unclean Hands Summary Judgment Should Issue

Plaintiff attempts to skirt an unclean hands finding with three arguments. First, Plaintiff argues that its behavior should not be subjected to unclean hands because its principal and co-owner (of 2 people) did the tortious acts. Opp. at 17:20-28. But that is of no moment: he did them as principal and owner of the plaintiff to address business issues of the plaintiff entity. That makes him an agent and his acts certainly bind the entity, just as any principal of any company who steals a competitor's SIM card and copies its business renders the principal liable. Owners of businesses (or their employees) committing torts for the benefit of the business always bind the company; that much is ancient law. *E.g., Najera v. S. Pac. Co.*, 191 Cal. App. 2d 634, 637-38, *citing* Rest. of Agency (Torts) § 213 *and citing* myriad common law cases as far back as the 1800's; *Davidson v. Welch*, 270 Cal. App. 2d 220, 228-29 (1969) (respondeat superior).

Second, Plaintiff argues that there is no obligation to preserve evidence. Opp. at 18:1-8. That is false. Plaintiff ignores the myriad law cited in the moving papers and the long-established duty to preserve. Spoliation is unlawful precisely because it leads to degradation of the facts and these very situation of "claims" of facts that were eminently documentable—this is why courts grant sanction from evidentiary preclusions to evidentiary inferences that the lost evidence was harmful. This Court can and should do the same within unclean hands and adjudicate this as an example of unclean hands.

Third, Plaintiff argues that it did not ever admit to taking the idea from its prior employer. But the evidence that Plaintiff took the idea from their employer came from their own text exchange where Plaintiffs said it! SOU41. To be clear: its prior employer made the same eye product called Idollash (which Plaintiff admitted was similar to Boostlash in name too) and sold it online; and the deceptive

1  marketing websites were known marketing tools too. SOU39, 45. Thus, when
2  Plaintiff's principals learned of their newfound competition that they laughed about
3  how the defendants were stealing their business idea the way they had stole their
4  prior employer's business idea, it means entirely and only that. SOU41. The Court
5  does not have to most basic testimony of both principals—each of whom worked for
6  Market Health, knew of its Idollash product, started selling Boostlash and even
7  admitted that they were confusingly similar to market Health's Idollash (SOU39)—
8  and till further ignore the facial exchange and adopt some bizarre linguistic
9  gymnastics of the SOU41 text exchange between Plaintiff's principals as if night
10 means day and day means night.

11      A summary judgment on unclean hands should issue.

12 **III.   THE THROW AWAY ARGUMENTS MAKE NO SENSE**

13      In the Opposition's Section II, there are several seeming throw away fact
14 statements or arguments that mostly do not make their way to the actual argument,
15 all of which nonetheless are insufficient to justify denying this motion.

16      A.   Plaintiff says it did not copy from its employer. This is indisputably not
17 true given their own deposition testimony. *See supra* § II.C. And it is also irrelevant
18 to *Sleekcraft* anyway, as it relates to the unclean hands issue.

19      B.   Plaintiff admitted it stole the SIM card from the phone while Arash was
20 in the shower without asking his permission. Saying it was "borrowed" as the
21 Opposition seeks to do in § II.B is meritless. And the contention that there was
22 never a lie about it (Opp at 2:8-21) is riddled language at odds with Plaintiff's own
23 actual discovery responses—first, Plaintiff claimed the phone was left lying around
24 and left open and only photos taken (Dkt113-7 at 3:3-7) before it was admitted (after
25 Verizon and Apple internal proved that Dkt113-7 was a lie) that it was taken and the
26 SIM card removed with a code downloaded to then access and that more than photos
27 were taken and entire conversations were copied. (SOU36-38).
28

*In any event,* none of this debate matters for this MSJ as this is not a motion on defendants' counterclaims for hacking/theft where atom splitting about "taking-borrowing" may matter as Defendants never moved for a finding of liability on the counterclaims. Thus, whether it was borrowed or stolen, hacked or just peered into, is all of no moment as the only relevant fact is that it was taken without permission and matters copied from it without permission—that is enough for unclean hands.

C. The very confusing evidence cited is dozen alleged calls out of tens of thousands of sales that were never preserved despite a legal obligation to do so. Even those scant calls if assumed true do not alter the *Sleekcraft* analysis: there is simply no possible way that consumers confused these 2 brands given the totality of the facts of the products and websites and advertising channels and information relayed to consumers, which of course is why no survey evidence is even offered and why no actual counter evidence or argument is even offered.

Plaintiff chose to use a marketing technique based on fraud and deception: people who search for eyelash boosting products get directed NOT to plaintiff's boostlash website but instead a fake review .org site that never claims any affiliation with boostlash, precisely because it is trying to deceive people into thinking that a neutral consumer reporting type agency has evaluated products and decided boostlash is the best. **That choice to do this kind of advertising has huge trademark consequence**s: the expenditures are not building the boostlash brand to get searches for that word, but are built around generic product searches that lure people to fake sites to then close a sale based on deception. It's literally the opposite of, for example, Nike spending money to get people to search for Nike. If Nike spent all its money on campaigns to get people who search for "best running shows" to go to secretly owned .org review sites that rank shoes and then, miraculously, claim Nike is the best, no court would ever conclude that *those* expenditures are "Nike trademark" expenditures within *Sleekcraft*—they are "best running shoe" expenditures built around tricking consumers.

D. The pages spent contending IP cases do not get summary judgments is meritless boilerplate. All courts routinely grant defense summary judgments in IP cases—the case books, whether F. Supp's of F.3d's, are filled with them obviously. The act of filing an IP claim does not mean one is ipso facto entitled to a jury.

## IV. PLAINTIFF'S INTERPRETATION OF THE GOOGLE DOCUMENT IS A KNOWING FRAUD AND HAS NO FACTUAL BASIS

Plaintiff claims it has lost money in 2017-21 claiming that defendant has been using their name in those years in keyword searches. But the undisputed facts after two experts have looked at Defendants' SEO accounts are that Defendants never used the "boostlash" name in all those years. Literally have gone through the actual accounts and the words were not used, period. Thus, as an undisputed matter of fact it never happened.

The document that Plaintiff relies on to say it actually happened—the Google Auction Insight Report (SOU33)— has been proven to not show what plaintiff claims it shows; that is, it is not a Google document that identifies keywords being used by the listed websites in that document at all. SOU33. It shows what websites have come up in searches *that Google has identified as related due to its algorithms that identify similar, generic products services that it has tied or connected to words*. Two experts have confirmed this fact based on their expertise about the Google report – and also by reviewing Defendants; actual ad purchases accounts that do not show the claimed ad word purchases that Plaintiff wants to imply exist from the Google document. And even Plaintiff's own expert actually does not say it shows what plaintiff says; instead, he cagily simply summarizes the report (not even expert testimony) and never says he even knows what it does or how it works or why Google uses it. *See* Sherman Opp. Declaration ¶ 9. This is because he knows it does not say what is being claimed—to say so would be an outright lie—and both of defendants' experts have unequivocally confirmed exactly what the Google report is showing. (Which also comports with the most basic common sense: the idea that

ebay, amazon, Maybelline and *Elle* magazine are all buying the "boostlash" word to drive sales of their non-eyeliner products or magazines is facially silly).

## V. SHAM DECLARATIONS AND ARGUMENTS

The Court should also hold that the late-filed reply declarations are sham ones designed to avoid already-made binding factual statements in depositions and so the declarations should be stricken as such. *See Yeager v. Bowlin*, 693 F.3d 1076, 1080-81 (9th Cir. 2012).

Specifically:

1. The Opposition Yasha Declaration (Dkt 117-1 ¶ 11) states that he shared "secrets" to try to create fact issues. But the deposition testimony proves every single thing taken was not a secret. SOU42-46. Here, Dkt117-1 ¶ 11 cannot be used to controvert the already-admitted facts.

2. The Opposition Ani declaration saying she chose the boostlash name because it had a nice "zip" or sound to it (Dkt117-2 ¶ 10) is simply made-up to try to undo the prior testimony under penalty of perjury where it was expressly stated that the name was chosen because it perfectly described what the product did (SOU6-7).

3. The actual text exchange shows literally in black and white that when discussing woolash Plaintiff principal Yasha said Woolash stole it and Ani replied "yes like us haha". SOU41. The Ani declaration offered in opposition claims that the phrase referred to boostlash as being the one stolen from but that makes no facial, grammatical, or linguistic sense (Dkt117-2 ¶ 9) and is a sham.

4. Woolash's fake review .org and other websites that tout their product as number 1 are in no way tethered to woolash as it is never mentioned as sponsoring the site anywhere. SOU24. The Dkt#117-2 ¶ 11 claim that "Joell Lockhart" was used as a pseudonym because Ani was pregnant is

another sham falsehood—the review site does not say it is a woolash site with Joell. It says it is a review site unaffiliated with woolash entirely. If a pseudonym was needed due to Ani's pregnancy/privacy, the site would be an open woolash site with the fake Joell. This claim is a sham one designed to undo the basic flaw that exists in Plaintiff's case and so should be discarded and ignored.

5. The opposition claim that there was not an oral non-compete and there was only an oral confidentiality agreement. This is false as against the TAC, deposition testimony and even the reply Yasha declaration.

## VI. CONCLUSION

The motion should be granted for all the reasons stated therein, which are not adequately or in most cases even at all opposed. As indicated, given the need to end this litigation and conserve financial resources, Defendants will voluntarily dismiss their counterclaims without prejudice so that finality may be reached with a final judgment entered so that this case can finally end, a copy of which Proposed Final Judgment is filed concurrently herewith.

Dated: January 24, 2022                    **ONE LLP**

By: /s/ Peter R Afrasiabi
    Peter R. Afrasiabi
    Samareh J. Afrasiabi

Attorney for Defendants,
Woo Signatures, LLC, Tadeh Booghosianssardabi, Farshid Karamzad Goflsaz, and Arash Sedighi