UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**  **'O'**

| Case No. | 2:18-cv-02960-CAS-Ex | Date | February 7, 2022 |
|---|---|---|---|
| Title | Boost Beauty, LLC v. Woo Signatures, LLC et al | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | Katie Thibodeaux | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Drew Sherman | Peter Afrasiabi |

**Proceedings:**   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 113, filed on December 22, 2021)

## I.   INTRODUCTION

On April 9, 2018, plaintiff Boost Beauty, LLC ("Boost Beauty") filed this action against defendants Woo Signatures, LLC ("Woo Signatures"), Tadeh Booghosianssardabi, Farshid Karamzad Goflsaz, Arash Sedighi, and Does 1 through 10 (collectively, "defendants"). Dkt. 1. Booghosianssardabi, Goflsaz, and Sedighi are principals of Woo Signatures. Id. The operative third amended complaint was filed on November 13, 2018. Dkt. 32 ("TAC"). In the TAC, plaintiff alleges that defendants engaged in a scheme to gain access to plaintiff's confidential information and thereby replicate the beauty product that plaintiff produces, markets, and sells. See generally Id. Plaintiff specifically alleges that defendants unlawfully copied its signature eyelash enhancement product, and unlawfully used variations of the term "BoostLash," plaintiff's trademarked product name, as an internet search engine adword. Id.

Plaintiff's TAC alleged claims for: (1) copyright infringement, in violation of the Copyright Act, 17 U.S.C. § 501 et seq.; (2) contributory copyright infringement; (3) vicarious copyright infringement; (4) intentional fraud, as against Sedighi; (5) breach of implied contract; (6) federal trademark infringement and counterfeiting; (7) unfair competition and false designation of origin, in violation of the Lanham Act, 15 U.S.C. § 1125(a); (8) trademark infringement under California common law; (9) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq.; (10) trademark infringement by imitating and false advertising, in violation of the Lanham Act, 15 U.S.C. §§ 1114(a)–(b); and (11) common law unfair competition and false designation of origin. See TAC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-02960-CAS-Ex | Date | February 7, 2022 |
|---|---|---|---|
| Title | Boost Beauty, LLC v. Woo Signatures, LLC et al | | |

On February 11, 2019, the Court dismissed plaintiff's counterfeiting claim (part of plaintiff's sixth claim) with prejudice. Dkt. 42. On May 14, 2019, the Court granted defendants' motion for judgment on the pleadings as to plaintiff's first, second, and third claims, which pertain to copyright infringement, with leave to amend. Dkt. 52. Plaintiff did not amend his complaint.

On March 10, 2021, defendants filed counterclaims for: (1) computer fraud and abuse, in violation of 18 U.S.C. § 1030; (2) computer data access and fraud, in violation of Cal. Penal Code § 502; (3) violation of right to privacy; and (4) violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, et seq., against counter-defendants Boost Beauty, Ani Moosakhanian, and Yasha Asadpoor. Dkt. 81. Moosakhanian and Asadpoor are principals of Boost Beauty. Id.

On December 22, 2021, defendants moved for summary judgment on the fourth through eleventh causes of actions in plaintiff's complaint, and on defendants' affirmative defenses of fair use, unclean hands, and de minimis. Dkt. 113-1 ("Mot."). Defendants also submitted a statement of uncontroverted facts and conclusions of law in support on their motion for summary judgment. Dkt. 113-2 ("SUF"). On January 21, 2022, after inadvertently filing an incorrect draft version of their opposition, Boost Beauty and counter-defendants Moosakhanian and Asadpoor (collectively, "plaintiff") filed an untimely opposition to defendants' motion for summary judgment. Dkt. 116 ("Opp.").[1] Plaintiff also submitted a statement of genuine disputes of fact. Dkt. 118 ("GDF"). On January 24, 2022, defendants submitted their reply. Dkt. 119 ("Reply").

The Court held a hearing on February 7, 2022. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.   BACKGROUND

Unless otherwise noted, the Court references only facts that are uncontroverted.

---

[1] In their reply, defendants argue that plaintiff's untimely opposition should be stricken because it was filed one business day before defendants' reply was due, without any notice to defendants. Reply at 6. The Court finds that striking plaintiff's opposition would be unduly prejudicial.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-02960-CAS-Ex | Date | February 7, 2022 |
|---|---|---|---|
| Title | Boost Beauty, LLC v. Woo Signatures, LLC et al | | |

### A.     Background

Prior to founding Boost Beauty, plaintiff's principals, Moosakhanian and Asadpoor, worked for a company called Market Health that sold Idol Lash, an eyelash enhancing serum.  SUF No. 39.  Plaintiff started selling BoostLash, which has the same purpose and functionality as Idol Lash, in 2017, while plaintiff's principals were still employed at Idol Lash.  Id.

Plaintiff's principal Asadpoor and defendant's principal Sedighi "were roommates from 2013 through April 2018 with other people as apartment roommates with them." SUF No. 40.  While defendants contend that Asadpoor operated plaintiff's business out of the apartment in the open (SUF No. 2), Asadpoor in his declaration responds that "[i]f I did do work at my house, I would do it from a computer that was not out where anyone could see" and "[t]here was only one time where I had to do the packaging from my house."  Dkt. 117-1 (Asadpoor Decl.) ¶ 8.

In his declaration, Asadpoor states that he "previously made [Sedighi] promise to not disclose and not use for his own benefit Plaintiff's proprietary information, secrets, and strategies for a successful business after I got tired of [Sedighi] consistently asking me about the business."  Id. ¶ 12.  He adds that Sedighi "agreed to the non-disclosure and non-use agreement but didn't ask anything else about any other terms for that agreement. . . . For example, if I would have sold my interest or the business would have shut down within the first year, I would have considered the agreement done or null."  Id.  At his deposition, Asadpoor testified that he expected Sedighi to honor the oral confidentiality agreement "forever," and that he never asked Sedighi to sign a written confidentiality agreement.  Dkt. 113-6 (Asadpoor Depo.) at 59:6-60:3.  Asadpoor acknowledged at his deposition that there was no witness to the alleged oral agreement.  Id. at 117:9-16.

Defendants point out that, at his deposition, Asadpoor identified Boost Beauty's website, marketing, advertising, and product sourcing as the information he wanted Sedighi to keep secret.  Id. at 73:5-24.  However, Boost Beauty's website, marketing, and advertising is publicly available, and "[t]he source of the eye serum is a company called Cosmetic Solutions, a third-party vendor that private labels serums for any companies that want to sell them."  SUF Nos. 43-44.  If "skin care manufacturer" is searched for on Google, Cosmetic Solutions comes up as the first search result on page one of Google's organic results.  SUF No. 44; GDF No. 44.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 2:18-cv-02960-CAS-Ex | Date | February 7, 2022 |
|----------|----------------------|------|------------------|
| Title | Boost Beauty, LLC v. Woo Signatures, LLC et al | | |

### B.  Asadpoor Learns of WooLash and Appropriates Sedighi's Sim Card

Plaintiff learned of the WooLash business in February 2018.  SUF No. 47.
Defendants provide text message evidence wherein Moosakhanian and Asadpoor texted
about the WooLash and stated that WooLash "stole" the business idea "just like us."
SUF No. 41.  However, Moosakhanian contends that "when I stated in the text 'just like
us,' I was referring to us as the ones being stolen from."  Dkt. 117-2 (Moosakhanian
Decl.) ¶ 9.

In any event, when Asadpoor learned that Sedighi was running WooLash, he "was
shocked, did not want to talk to [Sedighi] about it[,] and [on February 15, 2018, he] took
[Sedighi's] SIM card from [Sedighi's ] phone and got into [Sedighi's ]Telegram app[]
communications."  SUF Nos. 36, 47; GDF Nos. 36, 47.  Plaintiff admits that Asadpoor
took the SIM card, but claims that Sedighi's phone "was not hacked" because "the SIM
card did not allow [Asadpoor] to view everything" on Sedighi's phone.[2]  GDF Nos. 36,
47.  Once Asadpoor has access to Sedighi's Telegram application, he was able to
monitor defendants' communications, including defendants' discussions of business ideas
and conversations with their lawyers, for at least three months.  SUF Nos. 37, 38; GDF
Nos. 37, 38.  "Over that time, while they did not know they had been hacked,
[defendants] often saw odd situations of Boost Beauty doing business things [] as soon as
the Woo principals spoke of them amongst themselves in Telegram; [defendants] did not
know they had been hacked and at the time thought they were bizarre coincidences."
SUF No. 38.

### C.  Plaintiff's BoostLash Product and Defendants' WooLash Product

"BoostLash" is registered as a trademark for "non-medicated eyelash growth
serum."  SUF No. 4.  Defendants contend that plaintiff has admitted BoostLash is
descriptive based on deposition testimony wherein plaintiff's principal Moosakhanian
states that plaintiff chose the name BoostLash because "it's right to the point," and "the
meaning of the word is perfect for the product."  Dkt. 113-3 (Moosakhanian Depo.) at

---

[2] Defendants note that plaintiff initially stated in discovery responses that Sedighi left his
phone lying around and that Asadpoor looked at the "unlocked and unsecured phone" and
"transferred [] non-encrypted, unsecured, and non-confidential photos to how own mobile
phone," but later, at his deposition, Asadpoor admitted to taking the SIM card.  See Dkt.
113-17; SUF No. 36.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:18-cv-02960-CAS-Ex | Date | February 7, 2022 |
|---|---|---|---|
| Title | Boost Beauty, LLC v. Woo Signatures, LLC et al | | |

22:11-16; Dkt. 113-5 (Moosakhanian Depo.) at 54:22-24. Moreover, at her deposition, Moosakhanian added that "the purpose of the product is to boost the size of eyelashes." Dkt. 113-5 (Moosakhanian Depo.) at 83:3-5. In response, plaintiff points to Moosakhanian's opposition declaration, wherein Moosakhanian states that "Plaintiff chose the name of the product to be 'Boostlash,' not because it was descriptive of the product . . . but, because the name had a nice, tight, sound and 'zip' to the word." Dkt. 117-2 (Moosakhanian Decl.) ¶ 10. There are 47 live trademarks using "Boost" in cosmetics, and 730 registered trademarks using "Lash." SUF Nos. 9-10.

BoostLash and WooLash are both eyelash growth serum products. They are labeled and packaged as follows:

Plaintiff's Product (SUF No. 14):            Defendants' Product (SUF No. 15):




Plaintiff's product, BoostLash, and defendants' product, WooLash, each cost $49.95 per unit. SUF Nos. 14-15. Defendants claim that "Plaintiff admitted in deposition that its advertising expenditures are to drive traffic to fake review sites Plaintiff has created, with fake professionals/doctors allegedly rating products, and where Plaintiff's product appears to be neutrally evaluated and rated Number 1, so that people once on that page will click through to Plaintiff's page to buy it." SUF No. 11. Plaintiff

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:18-cv-02960-CAS-Ex | Date | February 7, 2022 |
|---|---|---|---|
| Title | Boost Beauty, LLC v. Woo Signatures, LLC et al | | |

responds that "the reviews are not fake.  They are just done with pseudonyms."  GDF No. 11.

### D.   Evidence of Consumer Confusion

It is undisputed that "[p]laintiff alleged a couple dozen consumers were confused between the [two] companies . . . yet no evidence of this was ever memorialized by either Plaintiff['s] principal [Moosakhanian] or [plaintiff's] employees, despite alleged instructions from Plaintiff to its employee[s] to memorialize such lawsuit evidence." SUF No. 12; see also SUF No. 13.

Plaintiff responds that "Plaintiff's employee was deposed and testified to the instances of customer confusion."  Opp. at 14.  However, plaintiff did not attach the relevant portions of the deposition transcript to their opposition or to their statement of genuine disputes of fact.

### E.   "Adwords" Campaigns

Defendants claim that "[i]t is a long-established practice in [pay-per-click] adwords campaigns for competitors to use brand names in [] search results . . . Google allows it expressly."  SUF No. 30.  Plaintiff responds that "whether it is acceptable or not does not mean it does not transgress trademark law."  GDF No. 30.

With their motion for summary judgment, defendants submitted the expert report of Chris Silver Smith, who is "an expert and consultant in a number of areas, including internet technology, Search Engine Optimization ('SEO'), Pay-Per-Click ('PPC') Advertising, domain names, website design and programming, internet marketing, and online reputation management."  Dkt. 113-2 (Silver Smith Report) ¶ 2.  According to Silver Smith, "[i]t is unequivocal that the plaintiff's mark, BoostLash, appears nowhere in the visible text of the ad that they claimed Woo improperly copied or imitated.  Id. ¶ 52.  However, defendants "targeted their ad for a very brief period to appear when BoostLash was searched upon."  Id. ¶ 53.[3]  In his rebuttal expert report, Silver Smith adds

---

[3] Silver Smith adds that "Google only displayed [defendants'] ad 176 times for a total of only 12 clickthroughs based on the conquesting keyword targeting of 'boostlash,'" and that "Google only displayed [defendants'] ad 152 times for a total of only 28 clickthroughs based on the conquesting keyword of 'boost lash.'"  Dkt. 113-12 (Silver Smith Report) ¶¶ 68-69.  Further, "assum[ing] that average sales were distributed evenly

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:18-cv-02960-CAS-Ex | Date | February 7, 2022 |
|----------|---------------------|------|------------------|
| Title | Boost Beauty, LLC v. Woo Signatures, LLC et al | | |

that "For the period between August 5, 2018, through October 31, 2020, I was able to ascertain from Woo's [Google] ad accounts that they did not target 'boostlash' nor 'boost lash' with their [Google] ads." Dkt. 113-20 (Silver Smith Rebuttal Report) ¶ 24.

In response, plaintiff offers the expert report of Peter Kent, who is "an e-commerce and SEO [] consultant and author" who "provide[s] online e-commerce strategies to companies seeking to improve their business online, including search-engine optimization, Pay Per Click management, Web development, Web-site "conversions" and usability, and Web marking project management. Dkt. 117, Ex. B (Kent Report) ¶ 3. Kent states that Auction Insight reports covering a date range of December 1, 2018, to October 31, 2020 "demonstrate that the Defendants bid on and used the Google ad word 'boostlash.'" Id. ¶¶ 27-28.

In his rebuttal report, Silver Smith responds that "[t]he Auction Insights report that Boost produced only establishes that Woo's ads appeared for some searchers' queries that included 'boostlash,' not that Woo's ads targeted the 'boostlash' term directly." Dkt. 113-20 (Silver Smith Rebuttal Report) ¶ 25.

According to Silver Smith, "Google Trends indicates that the WooLash brand name is better established and more popular among searchers than the BoostLash brand." Dkt. 113-2 (Silver Smith Report) ¶ 132. Plaintiff responds that, without any survey evidence, the determination of which brand is better established is "conjecture." GDF No. 49.

## III.   LEGAL STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out "specific facts showing a genuine issue for trial" in order to defeat the motion. Anderson

over the clicks that brought in customers, Woo's ads targeting 'boostlash' and 'boost lash' only directly brought in 1.75% of sales, grossing only $75.68." Id. ¶ 71.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:18-cv-02960-CAS-Ex | Date | February 7, 2022 |
|----------|----------------------|------|------------------|
| Title | Boost Beauty, LLC v. Woo Signatures, LLC et al | | |

v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the facts presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV.   DISCUSSION

### A.   Plaintiff's Breach of Contract and Fraud Claim (Claims 4-5)

Defendants argue that the alleged oral agreement to maintain confidentiality and not compete is unenforceable under Cal. Bus. & Prof. Code § 16600, which states that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void," and that the oral agreement is barred by the statute of frauds as an agreement that cannot be performed within a year. Mot at 11-12 (citing Cal. Civ. Code § 1624(a)(1)). Moreover, defendants contend that even if there was a valid oral agreement to keep certain information secret, "the material at issue . . . was publicly available information not capable of being a secret." Mot. at 12. Defendants add that plaintiff's fraud claim also fails because "parties cannot skirt illegal oral agreements by recasting them as torts." Id. In particular, defendants contend that, as roommates, Asadpoor and Sedighi were not fiduciaries, and that courts often reject a fraud exception to the statute of frauds where the alleged injuries do not constitute an unconscionable injury. Id. at 13.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-02960-CAS-Ex | Date | February 7, 2022 |
|---|---|---|---|
| Title | Boost Beauty, LLC v. Woo Signatures, LLC et al | | |

In opposition, plaintiff argues that the oral agreement "was not a non-compete; it was a confidentiality agreement," and that "[Asadpoor] was not attempting to preclude [Sedighi] from the industry." Opp. at 17. Additionally, plaintiff argues that the oral agreement is not subject to the statute of frauds because "the statute of frauds does not apply to a contract of indefinite duration unless the terms absolutely foreclose completion of the performance of the contract within one year." Id. (citing Foley v. Interactive Data Corp., 47 Cal. 3d 654, 672 (1988)). Plaintiff adds that the length of the confidentiality agreement was "never examined by the Defendants" and that "[g]iven that all inferences and presumptions must be given to the non-moving party in a summary judgment motion, this Court must view the confidentiality agreement as being one which could have terminated in under a year." Mot. at 18. With respect to the fraud claim, plaintiff argues that no fiduciary relationship is required for actual fraud. Mot. at 18.

In reply, defendants contend that the oral agreement "was a permanent oral promise to not do something that was sued on and is still in effect by plaintiff's own testimony." Reply at 6 (citing SUF No. 1). Finally, defendants cite Tenzer v. Superscope, Inc., 39 Cal. 3d 18, 28-30 (1985), which found that plaintiffs may maintain an action in tort for fraudulent misrepresentation, even "where the allegedly fraudulent promise is unenforceable as a contract due to the statute of frauds," as long as plaintiff adduces "further evidence of fraudulent intent than proof of nonperformance of an oral promise." See Reply at 7.

The statute of frauds "is narrowly construed." Western Chance No. 2, Inc. v. KFC Corp., 957 F.2d 1538, 1541 (9th Cir. 1992) (citations omitted). "The mere possibility that performance can be completed within one year—even if not contemplated by the parties—is usually sufficient to remove the agreement from the statute of frauds." Id. "So long as performance within one year is theoretically possible, the agreement is not within the Statute of Frauds." MS Int'l, Inc. v. Luxury Stone Imports, Inc., No. SACV 11-01700-JVS(JPRx), 2012 WL 12894179, at *2 (C.D. Cal. May 10, 2012).

Here, the Court finds that the statute of frauds does not apply to the oral agreement, as plaintiff's corporation "could have dissolved within a one-year period." JAW Rest. Mgmt., LLC v. Fox Rest. Concepts, LLC, No. CV-06-2972-PHX-DGC, 2007 WL 1231658, at *3 (D. Ariz. Apr. 26, 2007) (concluding that statute of frauds did not govern an oral agreement). Additionally, "since [Sedighi] will have fully performed at the time of his death by refraining from [disclosing the confidential information] for his lifetime; and since [Sedighi] can die within one year, none of the provisions of the oral agreement

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-02960-CAS-Ex | Date | February 7, 2022 |
| Title | Boost Beauty, LLC v. Woo Signatures, LLC et al | | |

fall within the terms of the one-year provision of the Statute of Frauds." <u>Kuykendall v. Rockwell Int'l Corp.</u>, No. CV-76-2963-LEW, 1979 WL 223, at *2 (C.D. Cal. Feb. 27, 1979).[4]

The deposition of plaintiff's principal Asadpoor, wherein he testified that part of the oral agreement with Sedighi was that "he was not allowed to enter the same business" (Dkt. 113-6 (Asadpoor Depo.) at 90:9-18)), does not clarify whether the oral agreement was intended as a solely covenant not to compete, or also as a covenant to maintain the confidentiality of certain information. In any event, pursuant to Cal. Bus. & Prof. Code § 16600, "it is well established that broad covenants not to compete are void unless they involve a situation where a person sells the goodwill of a business [or] where a partner agrees not to compete in anticipation of dissolution of a partnership, or they are necessary to protect . . . trade secrets." <u>Comedy Club, Inc. v. Improv W. Assocs.</u>, 553 F.3d 1277, 1290 (9th Cir. 2009). Neither party alleges any of the exceptions to Cal. Bus. & Prof. Code § 16600 apply in this case. To the extent the oral agreement contains an impermissible non-compete clause, that clause is void and severed from the rest of the oral confidentiality agreement. <u>See</u> <u>Zajicek v. Kool Vent Metal Awning Corp. of Am.</u>, 283 F.2d 127, 133 (9th Cir. 1960) ("If the portion of the contract restraining trade can be severed, it is the apparent policy of the California courts to rule that it shall be, and the part not so tainted enforced.").[5]

---

[4] While plaintiff's operative complaint alleges the breach of an implied contract (TAC ¶¶ 81-87), the evidence submitted by the parties suggests that the contract at issue was in fact an express oral contract. While the Court has already determined that the statute of frauds does not bar enforcement of the oral agreement to the extent it constitutes an express contract, the Court also notes that the statute of frauds does not generally render an implied contract unenforceable because "[w]hen one party has fully performed under a bilateral oral agreement, that performance 'operates to remove the bar of the statute.'" <u>Retired Emps. Ass'n of Orange Cty., Inc. v. Cty. of Orange</u>, No. SACV 07–1301 AG (MLGx), 2008 WL 11336953, at *4 (C.D. Cal. Feb. 12, 2008) (quoting <u>Dean v. Davis</u>, 73 Cal.App.2d 166, 169 (1946)).

[5] At oral argument, defendants' counsel contended that if the oral agreement is only an agreement to maintain the confidentiality of certain information about plaintiff's business, then plaintiff suffered no cognizable damages as a result of defendants' alleged breach. The Court finds that this argument is fact intensive, and not a proper basis for

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-02960-CAS-Ex | Date | February 7, 2022 |
|----------|----------------------|------|------------------|
| Title    | Boost Beauty, LLC v. Woo Signatures, LLC et al | | |

With respect to defendants' argument that even if there was a valid oral agreement to keep information secret, "the material at issue was not even a secret and was publicly available information not capable of being a secret" (Mot. at 12), there is no evidence in the record indicating that the oral agreement expressly excluded publicly available information, and defendants provide no authority suggesting that a party cannot agree to refrain from disclosing information that may be in the public domain.

Finally, turning to plaintiff's claim for intentional fraud, "courts [] have dismissed promissory fraud claims where they appeared to be breach of contract claims adorned with promissory fraud buzzwords." Singh v. Amguard Ins. Co., No. CV 16-618 PSG (AJWX), 2016 WL 7469641, at *3 (C.D. Cal. Apr. 1, 2016). Here, plaintiff's fraud claim is duplicative of its breach of contract claim. Plaintiff's fraud claim alleges that defendants' principal Sedighi "inquired about the success of Plaintiff's business and gained that information by representing to [Asadpoor] verbally in a face to face conversation in the Summer of 2017 that he would keep the information confidential and would not use it to start a competing business." TAC ¶ 71. Likewise, plaintiff's breach of contract claim alleges that Sedighi "inquired of his roommate of over five years, [Asadpoor], as to the inner-workings of Plaintiff and its success in the market. . . . Based upon the trust one acquires in a roommate of over five years, [Asadpoor] disclosed to [Sedighi] the information being asked about. However, [] in order to provide the information, Plaintiff's principal [Asadpoor] made it clear [] that such information was confidential and proprietary, and the information could not be used, by [Sedighi] or any future partners, to start a business that would compete with Plaintiff." TAC ¶¶ 82-83. In sum, plaintiff "effectively seek[s] to take allegations underpinning a straightforward claim for breach of [] contract and recast them as torts, which consist of nothing more than [defendants'] alleged failure to make good on its contractual promises." UMG Recordings, Inc. v. Glob. Eagle Ent., Inc., 117 F. Supp. 3d 1092, 1106 (C.D. Cal. 2015) (internal citations and quotation marks omitted). Without any evidence suggesting that defendants' made representations other than those captured by the terms of the oral agreement, summary judgment of plaintiff's fraud claim is appropriate.

---

summary judgment, especially where plaintiff's contract damages (or lack thereof) was not briefed by the parties.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-02960-CAS-Ex | Date | February 7, 2022 |
| Title | Boost Beauty, LLC v. Woo Signatures, LLC et al | | |

Accordingly, the Court **DENIES** defendants' motion for summary judgment of plaintiff's breach of contract claim and **GRANTS** defendants' motion for summary judgment of plaintiff's fraud claim.

**B.    Plaintiff's Claims for Trademark Infringement, False Advertising, and Unfair Competition (Claims 6-11)**

Plaintiff's trademark infringement, false advertising, and unfair competition claims assert that: (1) WooLash and BoostLash are confusingly similar (the "Brand Name Claim"); and (2) that defendants use of "boost" and "boostlash" in Google AdWords violates the Lanham Act (the "Keyword Claim").  See TAC ¶ 43, 92-93, 122-23.

Courts apply the same analysis when reviewing claims, based on the same infringing conduct, for trademark, false advertising, and unfair competition claims.  See 15 U.S.C. §§ 1114, 1125(a); see also E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1288 n.2 (9th Cir. 1992) (noting that elements of infringement and unfair competition claims are essentially the same, and their respective rulings "stand or fall together"); Ingrid & Isabel, LLC v. Baby Be Mine, LLC, 70 F. Supp. 3d 1105, 1134 (N.D. Cal. 2014) ("To successfully maintain an action for . . . false designation of origin [or] unfair competition under the Lanham Act or California law, plaintiff must show that it has a valid trademark and that defendant's use of the mark is likely to cause confusion").  The Court will also simultaneously analyze plaintiff's claims for California common law trademark infringement, false advertising, and unfair competition, because these California claims are "substantially congruent" with Lanham Act claims.  Playboy Enter., Inc. v. Netscape Commc'n. Corp., 354 F.3d 1020, 1024 n.10 (9th Cir. 2004).  As such, for purposes of the instant motion, the Court will address plaintiff's sixth through eleventh claims together.

To prevail on a claim for trademark infringement under the Lanham Act, a plaintiff must prove: (1) ownership of a valid trademark; (2) use of the mark without its consent; and (3) that such use is likely to cause confusion.  Credit One Corp v. Credit One Financial, Inc., 661 F. Supp. 2d 1134, 1137 (C.D. Cal. 2009); see also Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1202 (9th Cir. 2012).

1.    Whether BoostLash is Descriptive

"To be a trademark, a designation must be 'distinctive.'"  J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 4:13 (5th ed. 2021).  "Marks are

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | 2:18-cv-02960-CAS-Ex | Date | February 7, 2022 |
|---|---|---|---|
| Title | Boost Beauty, LLC v. Woo Signatures, LLC et al | | |

generally classified in one of five categories of increasing distinctiveness: (1) generic, (2) descriptive, (3) suggestive, (4) arbitrary, or (5) fanciful." <u>Zombondo Ent., LLC v. Falls Media, LLC</u>, 602 F.3d 1108, 1113 (9th Cir. 2010).

> Suggestive, arbitrary, and fanciful marks are considered inherently distinctive and are automatically entitled to federal trademark protection because their intrinsic nature serves to identify a particular source of a product. Generic marks are not eligible for trademark protection. Merely descriptive marks are somewhere in-between; although they are not inherently distinctive and are therefore not entitled to automatic trademark protection, a merely descriptive mark can become protectable if it has acquired distinctiveness as used on or in connection with the applicant's goods in commerce. This acquired distinctiveness is referred to as "secondary meaning."

<u>Id.</u> (internal citations and quotation marks omitted). In the Ninth Circuit, "the imagination test is [the] 'primary criterion' for evaluating distinctiveness." <u>Id.</u> at 1116. The imagination test "asks whether 'imagination or a mental leap is required in order to reach a conclusion as to the nature of the product being referenced.'" <u>Id.</u> at 1115 (quoting <u>Rudolph Int'l, Inc. v. Realys, Inc.</u>, 482 F.3d 1195, 1198 (9th Cir. 2007)). "[T]he burden to show that there is no genuine issue of material fact is on the moving party. . . while the non-moving party [] gets the benefit of reasonable inferences." <u>Zombondo Ent., LLC</u>, 602 F.3d at 1115.

Defendants argue that plaintiff's BoostLash registration is descriptive and invalid. Mot. at 13-14. Defendants point to plaintiff's failure to offer survey work to assess secondary meaning, the purported "concessions" of plaintiff's principals in deposition that BoostLash is descriptive, and the definition of the word "boost," which "is defined as 'to raise or lift by pushing up from below,' or 'to increase; raise.'" <u>Id.</u> at 14-15 (quoting SUF No. 5). Finally, defendants argue that "there are no mental leaps of logic or imagination required for an eye care consumer to connect 'BoostLash' to boosting lash size . . . the mark is instantaneously descriptive of the product." Mot. at 15.

In opposition, plaintiff argues that BoostLash is not descriptive because it is a "made-up word which is not in the dictionary." Opp. at 22.

Whether the BoostLash is descriptive, and, if so, whether it has acquired secondary meaning, represent questions of fact. <u>See Zombondo</u>, 602 F.3d at 1113 ("Which category

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-02960-CAS-Ex | Date | February 7, 2022 |
|---|---|---|---|
| Title | Boost Beauty, LLC v. Woo Signatures, LLC et al | | |

a mark belongs in is a question of fact."). The Court is unable to meaningfully analyze these questions on the meager factual record before it. To determine protectability, surveys and other forms of consumer research are often necessary. Neither party has submitted such evidence.

Moreover, the Court's attempt to apply the imagination test is inconclusive in that the Court is unable to determine whether consumers would require a mental leap to understand that BoostLash refers to an eyelash growth serum. In Zobmondo, the Ninth Circuit stated that "[g]iven the record before us, which lacks comprehensive consumer surveys, we cannot say with confidence precisely what consumers will understand the [the phrase at issue] to mean, nor are we confident that our own understanding of the phrase is an adequate substitute." 602 F.3d at 1116. Accordingly, "giv[ing] all reasonable inferences" to the non-movant, the Zobmondo court "concluded that that the imagination test is inconclusive by itself to determine if the challenged mark is descriptive or suggestive[.]" Id. at 1117. The same reasoning applies here. Summary judgment premised on the purported descriptiveness of BoostLash is inappropriate based on the factual record currently before the Court. The fact that the USPTO has granted a registration for BoostLash counsels against finding as a matter of law that BoostLash, as used by plaintiff, is descriptive. See Persona Cosms., Inc. v. Societe Des Produits Nestle S.A., No. 2:21-cv-04644-JVS-KES, 2021 WL 6103348, at *3 (C.D. Cal. Nov. 3, 2021) ("Where the USPTO issues a registration without requiring proof of secondary meaning, the presumption is that the mark is inherently distinctive.") (internal citations and quotation marks omitted).

  2.  Likelihood of Confusion – Sleekcraft Analysis

"The 'likelihood of confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." Rearden, 683 F.3d at 1209.

The eight-factor Sleekcraft test is used in the Ninth Circuit to analyze the likelihood of confusion question in all trademark infringement cases, both competitive and non-competitive. The eight factors are as follows: (1) the strength of the mark; (2) the proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**           **'O'**

| Case No. | 2:18-cv-02960-CAS-Ex | Date | February 7, 2022 |
|---|---|---|---|
| Title | Boost Beauty, LLC v. Woo Signatures, LLC et al | | |

the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; (8) likelihood of expansion of the product lines.

Dr. Seuss Enterprises v. Penguin Books USA, Inc., 109 F.3d 1394, 1404 (9th Cir. 1997) (citing AMF Inc. v. Sleekcraft Boats, 599 F.2d 341, 348–49 (9th Cir. 1979)). While the Sleekcraft factors are considered in reaching a decision on the issue of likelihood of confusion, "no mechanistic formula or list can set forth in advance the variety of elements that comprise the market context from which the likelihood of confusion must be determined." Dr. Seuss Enterprises, 109 F.3d at 1404. "The ultimate question of likelihood of confusion is predominantly factual in nature, as is each factor within the Sleekcraft likelihood of confusion test." Entrepreneur Media, Inc. v. Smith, 279 F.3d 1135, 1140 (9th Cir. 2002).

"[T]he Sleekcraft factors (1) are non-exhaustive, and (2) should be applied flexibly, particularly in the context of Internet commerce." Network Automation, Inc. v. Advanced Sys. Concepts, Inc., 638 F.3d 1137, 1149 (9th Cir. 2011). "[B]ecause the sine qua non of trademark infringement is consumer confusion, when we examine initial interest confusion, the owner of the mark must demonstrate likely confusion, not mere diversion." Id.

Turning to the Sleekcraft factors, defendants contend that the BoostLash mark is weak because "there are 47 currently registered marks with the word 'BOOST' in cosmetics[,] and 730 cosmetics marks with the word 'LASH.'" Id. at 17 (citing SUF Nos. 9-10). Accordingly, defendants claim that "a consumer entering the terms 'boost' and 'lash' or 'boostlash' into a search bar, as is the case here, would expect to see advertisements and sponsored links to other lash enhancing products." Mot. at 17. Defendants also argue that there is no survey evidence or even written evidence of actual confusion, and that the purported telephone calls wherein consumers stated they were confused are hearsay. Id. at 19-20. Defendants note that BoostLash and WooLash are labeled differently and named differently, so that "there is simply no way" that they could be mistaken for one another. Id. at 20-21. Moreover, defendants contend that given that BoostLash and WooLash are eye care products that cost nearly fifty dollars, "as a matter of law consumers use a fair amount of caution and are [] discerning." Id. at 21. Finally, defendants claim that the fact that both parties use the internet should be given little weight (citing Playboy, 354 F.3d at 1028), that there is no evidence defendants intended WooLash to be similar to BoostLash, and that the names WooLash and BoostLash "are not similar at all—beyond each having the word lash and a double "o," the actual word

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-02960-CAS-Ex | Date | February 7, 2022 |
|----------|----------------------|------|------------------|
| Title | Boost Beauty, LLC v. Woo Signatures, LLC et al | | |

preceding lash is completely different, so they do not sound the same at all and do not have the same meaning." Id. at 21-23.

In opposition, plaintiff points Interstellar Starship Services, Ltd., 184 F.3d at 1109-1110, arguing that, in that case, the Ninth Circuit found that "five of the [Sleekcraft] factors create[ed] issues of fact that needed to be determined by a jury," and that "district courts must not weigh evidence on summary judgment motions." Opp. at 19-20. In particular, plaintiff argues that the strength of the mark, the similarity of the goods and services, defendants' intent, and the evidence of actual confusion are Sleekcraft factors that, in this case, "create genuine issues of material fact." Opp. at 20-23.

In reply, defendants attempt to distinguish Interstellar on the basis that, there, "the Ninth Circuit found the two marks at issue [epix and epix.com] were literally identical and so that counseled against a non-infringement finding," whereas "WooLash and BoostLash [are] two words that are not remotely identical . . . [which] counsels for noninfringement." Reply at 8. Defendants add that there is simply evidence of intent or actual confusion in this case. Id. at 8-9.

With respect to the strength of the mark, "[t]wo relevant measurements are conceptual strength and commercial strength. Network Automation, 638 F.3d at 1149. "Conceptual strength involves classification of a mark along a spectrum of generally increasing inherent distinctiveness as generic, descriptive, suggestive, arbitrary, or fanciful." Id. (internal citations and quotation marks omitted). "A mark's conceptual strength depends largely on the obviousness of its connection to the good or service to which it refers." Id. (internal citations and quotation marks omitted). "This factor is probative of confusion here because a consumer searching for a generic term is more likely to be searching for a product category." Id. Finally, "[c]ommercial strength is based on actual marketplace recognition, and thus advertising expenditures can transform a suggestive mark into a strong mark." Id. (internal citations and quotation marks omitted). Here, with respect to conceptual strength, defendants offer undisputed evidence that there are 47 live trademarks using "Boost" in cosmetics, as well as 730 registered trademark that use "Lash." See SUF No. 8-9. Accordingly, there is some level of connection to cosmetics products, which counsels against a finding of conceptual strength. With respect to commercial strength, plaintiff submits no evidence of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-02960-CAS-Ex | Date | February 7, 2022 |
|---|---|---|---|
| Title | Boost Beauty, LLC v. Woo Signatures, LLC et al | | |

marketplace recognition of the Boost Beauty brand or the BoostLash product.[6]  With respect to advertisements containing BoostLash, plaintiff offers two sponsored social media advertisements that lack any date or indica of the number of views.  Accordingly, with respect to both conceptual and commercial strength, the Court finds that plaintiff's mark is not strong, though this factor does not weigh heavily in either direction given the lack of evidence in either direction of commercial strength.

With respect to the proximity of the goods, BoostLash and WooLash appear to be identical products.  Where the products are "virtually interchangeable," this factor should not weight very heavily in the analysis.  Network Automation, 638 F.3d at 1150.

With respect to the similarity of the marks, other than the portion of the product names that refer to "lash," the rest of the names are not similar.  No reasonable consumer would mistake the term "woo" for the term "boost" in terms of "sight, sound, and meaning."  Sleekcraft, 599 F.2d at 351.  This is because "boost" and "woo" look different, sound different, and have different dictionary meanings.  Accordingly, this factor counsels against a likelihood of conclusion.

In the internet context, "a showing of actual confusion among significant numbers of consumers provides strong support for the likelihood of confusion."  Playboy, 354 F.3d at 1026.  Moreover, "actual confusion is at the heart of the likelihood of confusion analysis."  Id. at 1027.  Here, there is no admissible evidence of actual confusion.  While plaintiff claims that customers called and expressed confusion between BoostLash and WooLash these calls were never memorialized, and no other evidence of actual confusion exists in the record.  See SUF Nos. 12-13.  Testimony regarding third-party calls wherein the callers allegedly expressed actual confusion between BoostLash and WooLash is hearsay, as it describes out-of-court statements offered for the truth of the matter asserted.  See Avery Dennison Corp. v. Acco Brands, Inc., No. CV99-1877DT(MCX), 1999 WL 33117262, at *18 (C.D. Cal. Oct. 12, 1999) (finding that evidence of allegedly confused callers in a trademark dispute constituted inadmissible hearsay because "no identification [was] made of the people allegedly confused, [] no reason or explanation [was] given by these unidentified people for their confusion," and because there was no opportunity to

---

[6] The closest plaintiff comes is submitting its financial report for 2017-2021, which shows $823,105 in sales in 2017, $2,381,550 in sales in 2018, $1,849,025 in sales in 2019, $1,288,723.26 in sales in 2020, and $509,891.83 in sales in 2021.  Dkt. 117-2 at 8-9.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-02960-CAS-Ex | Date | February 7, 2022 |
|---|---|---|---|
| Title | Boost Beauty, LLC v. Woo Signatures, LLC et al | | |

cross-examine the callers regarding the reason for their alleged confusion). Without any admissible evidence of actual confusion in the evidentiary record before the Court, this factor weighs heavily against a likelihood of confusion.[7]

That plaintiffs and defendants both use the internet as a marketing channel carries little weight. See Playboy, 354 F.3d at 1028 ("Given the broad use of the Internet today . . . this factor merits little weight.").

With respect to the type of goods and degree of consumer care, the Ninth Circuit "expect[s] consumers searching for expensive products online to be [] more sophisticated." Network Automation, 638 F.3d at 1153. Here, the goods at issue are cosmetic products that consumers must apply to a sensitive portion of the body, and that cost nearly $50.00. This counsels against finding a likelihood of confusion. See Moroccanoil, Inc. v. Moroccan Gold, LLC, 590 F. Supp. 2d 1271, 1280 (C.D. Cal. 2008) ("[C]ourts have recognized that purchasers of fragrances and skin care products also exercise a higher degree of care and brand consciousness."); Glow Indus. v. Lopez, 273 F. Supp. 2d 1095, 1127 (C.D. Cal. 2003) ("Courts have recognized that purchasers of skin care products tend to exercise a high degree of care and brand consciousness.").

With respect to defendants' intent in selecting WooLash, there is no evidence in the record that defendants harbored an intent for consumers to confuse BoostLash with WooLash. See Sleekcraft, 599 F.2d at 354 ("When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived."). Accordingly, this factor weighs against finding a likelihood of confusion.

Finally, with respect to the likelihood of expansion of the product lines, "[w]here two companies are direct competitors, this factor is unimportant." Network Automation, Inc., 638 F.3d at 1153. Accordingly, the Court will not consider this factor.

---

[7] At oral argument, plaintiff's counsel suggested that the undisputed facts submitted by defendants are cognizable evidence of actual confusion because they acknowledge that plaintiff's employees received calls wherein consumers where confused. The Court disagrees. The undisputed facts submitted by defendants merely state that plaintiff never "memorialized any such *alleged* confusion." SUF No. 13 (emphasis added); see also SUF No. 12 ("plaintiff alleged . . . consumers were confused").

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-02960-CAS-Ex | Date | February 7, 2022 |
| Title | Boost Beauty, LLC v. Woo Signatures, LLC et al | | |

In sum, the lack of similarity of the marks, the lack of evidence of actual confusion, and the type of goods and degree of consumer care expected all weigh heavily against finding a likelihood of confusion.  The strength of the mark and the lack of evidence of intent also weigh somewhat against a likelihood of confusion.  The proximity of the goods, the marketing channels used, and likelihood of expansion of product lines do not meaningfully factor into the analysis.

Given the foregoing analysis, the Court finds that "[a]pplication of the <u>Sleekcraft</u> factors to the facts of this case does not raise a material issue of fact," and summary judgment is appropriate.  <u>See Surfvivor Media, Inc. v. Survivor Prods.</u>, 406 F.3d 625, 635 (9th Cir. 2005); <u>see also</u> <u>M2 Software, Inc., a Delaware corporation v. Madacy Ent., a corporation</u>, 421 F.3d 1073, 1085 (9th Cir. 2005) (Summary judgement appropriate, even though several factors favored plaintiff, because the "district court did not err in its weighing of the <u>Sleekcraft</u> factors and in reaching the overall conclusion that <u>M2</u> Software had failed to raise a triable issue as to a likelihood of confusion."); <u>Collins v. U.S. Dep't of Veterans Affs.</u>, 497 F. Supp. 3d 885, 894 (S.D. Cal. 2020) ("[S]ummary judgment is [] proper in trademark infringement cases where, as here, no genuine issue of material fact exists.").

        3.    <u>Google Search Advertisements</u>

Defendants argue that their use of "boost" and "boostlash" in Google Adwords advertisements in January 2018 does not create actionable consumer confusion because it represents "the undisputed standard custom" in the internet PPC advertising industry.  Mot. at 16.  Defendants add that using "boost" and "boostlash" behind the scenes is not unlawful as "the content result" following the search "is unequivocally not using the mark or a similar mark."  <u>Id.</u>  Moreover, defendants argue that, in keyword claims, "any 'behind the scenes' keyword issues used by parties are mooted by subsequent consumer experiences landing on clearly non-infringing pages."  <u>Id.</u> at 24 (citing <u>Passport Health, LLC v. Avance Health Sys.</u>, 823 Fed. Appx. 141, 150-51 (4th Cir. 2020); <u>Alzheimer's Disease & Related Disorders Ass'n v. Alzheimer's Found. of Am., Inc.</u>, 307 F. Supp. 3d 260, 273 (S.D.N.Y 2018)).

In opposition, plaintiff contends that "[w]hile the actual website for woolash.com and boostlash.com might be different in its appearance, woolash.com is not the only website the Defendants use in their marketing campaigns to lure consumers away from the Plaintiff."  Opp. at 23.  Further, plaintiff claims that "whether two different websites

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-02960-CAS-Ex | Date | February 7, 2022 |
|---|---|---|---|
| Title | Boost Beauty, LLC v. Woo Signatures, LLC et al | | |

look similar and, if so, whether the Defendants' website would cause likely cause confusion, are questions of fact for a jury to decide." Id. at 24. Finally, with respect to defendants' expert report, plaintiff argues that "[t]estimony based solely on personal opinion on the issue of likelihood of confusion should not be permitted because it would usurp the jury's role in making fact determinations." Id. at 24 (citing Chesebrough-Pond's, Inc. v. Faberge, Inc., 666 F.2d 393, 398 (9th Cir. 1982)).

The Ninth Circuit has stated that "in evaluating claims of trademark infringement in cases involving Internet search engines, we have found particularly important an additional factor that is outside of the eight-factor Sleekcraft test: the labeling and appearance of the advertisements and the surrounding context on the screen displaying the results page." Multi Time Mach., Inc. v. Amazon.com, Inc., 804 F.3d 930, 936 (9th Cir. 2015) (internal citations and quotation marks omitted). "[I]n the keyword advertising context [i.e., where a user performs a search on the internet, and based on the keywords contained in the search, the resulting web page displays certain advertisements containing products or services for sale,] the likelihood of confusion will ultimately turn on what the consumer saw on the screen and reasonably believed, given the context." Id. at 937 (internal citations and quotation marks omitted).

Plaintiff's expert offers the following example of a Google advertisement for WooLash that appeared after a search for BoostLash:



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-02960-CAS-Ex | Date | February 7, 2022 |
|----------|----------------------|------|------------------|
| Title | Boost Beauty, LLC v. Woo Signatures, LLC et al | | |

Dkt. 117, Ex. B ¶ 16. "Where a court can conclude that the consumer confusion alleged by the trademark holder is highly unlikely by simply reviewing the product listing/advertisement at issue, summary judgment is appropriate." <u>Multi Time Mach.</u>, 804 F.3d at 939. Here, the WooLash advertisement that appeared after the "boostlash" search is labeled as an advertisement, and features a product clearly labeled as WooLash, with no reference to plaintiff's BoostLash product. Accordingly, it is highly unlikely that a consumer searching for the BoostLash product would confuse it for the WooLash product. Summary judgment on plaintiff's Keyword Claim is appropriate, as the WooLash advertisement features "clear labeling that avoids likely confusion." <u>Multi Time Mach.</u>, 804 F.3d at 937.[8]

Given that the Court **GRANTS** summary judgment on plaintiff's sixth through eleventh claims, including the Brand Name Claim and Keywork Claim, the Court need not address defendants' causation, fair use, and de minimis doctrine arguments.

**C.     Unclean Hands**

Unclean hands requires proof that plaintiff's conduct was inequitable, and that plaintiff's inequitable conduct relates to the subject matter of its claims. <u>Pom Wonderful LLC v. Coca Cola Co.</u>, 166 F. Supp. 3d 1085, 1092 (C.D. Cal 2016). Defendants argue that unclean hands should bar plaintiff's claims because plaintiff's principal stole a SIM card from defendants' principal and gained access to a device used to communicate business and legal matters, and because "plaintiff admits it 'stole' the lash enhancer idea itself from its own former employer." Mot. at 30-31.

In opposition, plaintiff argues that "Plaintiff's principals never admitted to stealing anything from their previous employer," and, that the SIM card has "nothing to do with [] Plaintiff's lawsuit against the Defendants." Opp. at 26-27.

---

[8] At oral argument, plaintiff's counsel claimed that defendants' marketing campaigns include websites that do not explicitly state their association with defendants' WooLash products. However, plaintiff did not submit any documentary evidence of these advertisements with their opposition. There is no basis for the Court to conclude that a consumer searching for the BoostLash product would confuse it for the WooLash product because of these advertisements.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:18-cv-02960-CAS-Ex | | Date | February 7, 2022 |
|---|---|---|---|---|
| Title | Boost Beauty, LLC v. Woo Signatures, LLC et al | | | |

"'Whether to apply the defense of unclean hands is within the court's sound discretion.'" Intamin, Ltd. v. Magnetar Techs. Corp., 623 F. Supp. 2d 1055, 1075 (C.D. Cal. 2009), aff'd, 404 F. App'x 496 (Fed. Cir. 2010) (quoting McCormick v. Cohn, No. CV 90-0323 H, 1992 WL 687291, at *4 (S.D. Cal. July 31, 1992)). "To prevail, the defendant must demonstrate that the plaintiff's conduct is inequitable and that the conduct relates to the subject matter of its claims." Fuddruckers, Inc. v. Doc's B.R. Others, Inc., 826 F.2d 837, 847 (9th Cir. 1987). Here, the Court finds that the conduct of plaintiff's principal in "hacking" the SIM card of defendants' principal, while wrongful, is not sufficiently related to plaintiff's breach of contract and fraud claims to bar those claims outright. Moreover, the evidence regarding whether the plaintiff's lash idea was "stolen" from the former employer of plaintiff's principals is disputed. Accordingly, the Court declines to apply the unclean hands doctrine in this case.

## V.    CONCLUSION

In accordance with the foregoing, the Court **GRANTS** defendants' motion for summary judgment on plaintiff's fourth claim, and plaintiff's sixth through eleventh claims, and **DENIES** defendants' motion for summary judgment on plaintiff's fifth claim.

IT IS SO ORDERED.

| | 00 | : | 28 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |